## DOWAGIAC MFG. CO. v. WHITE ROCK LUMBER & HARDWARE CO.

Where plaintiff sold and delivered machinery to defendant for resale, expressly providing that title to all of it should remain in plaintiff till sold by defendant in the regular course of business or settled for, defendant's sale of part of it and settlement therefor does not vest the title to the remainder of it in him, so as to change, as to such part, the measure of damages provided by Civ. Code, § 2303, for breach of a buyer's agreement to accept and pay for personalty the title to which is not vested in him, where it is not resold.

WHITING, J., dissenting.

(Opinion filed November 2, 1910.)

On rehearing. Affirmed.

For former report, see 18 S. D. 105, 99 N. W. 854.

SMITH, J. This case is before the court upon a petition for rehearing. The original decision will be found reported in 18 S. D. 105, 99 N. W. 854.

In the petition for rehearing, it is strenuously urged that the decision affirming the judgment appealed from was rendered under a misapprehension by the court as to what the evidence in the record actually shows as to a delivery of the property in question by the appellant to the respondent. Appellant and respondent entered into a written agreement, whereby the respondent was authorized to sell at White Rock, and to the trade tributary thereto, seeding machinery manufactured by appellant. This agreement

contained the following provision: "In consideration of above covenants, party of the second part does hereby agree to purchase of said Dowagiac Company, grain drills and seeders of its manufacture, to supply all of their entire trade in above mentioned territory at prices shown by price list on the reverse side of this contract, and to settle for same, etc., accompanied by farmer's notes as collateral." This agreement also provides, as follows: "In all cases the title and ownership of goods covered by this contract shall remain and be vested in the party of the first part until sold by the party of the second part in the general course of business or settled for as above, and all receipts arising from the sale of these goods shall belong exclusively and absolutely to the party of the first part until settlement is complete according to the terms of this contract." The other provisions of the contract need not be referred to, as they are immaterial upon this appeal. At the trial plaintiff offered in evidence the contract containing the provisions above quoted, together with evidence tending to show that the grain seeding machinery sued for was actually delivered into the possession of the defendant the previous year, under a commission contract then existing between plaintiff and defendant, and had remained in defendant's possession since that time. Defendant offered certain evidence and the court made certain rulings upon matters of evidence which are assigned as error; but in the view we take of this case these assignments need not be noticed further. At the close of all the evidence, plaintiff moved for a direction of a verdict, which motion was overruled, whereupon the defendant entered a like motion, which was sustained, and a verdict was entered for the defendant upon which the judgment was thereafter rendered. The ruling of the court directing a verdict for the defendant is assigned as error, and this assignment presents the only question which need be considered upon this appeal.

It is the contention of appellant that the measure of damages for the alleged breach of contract on the part of the respondent is the purchase price of the machinery specified in the contract, while it is the contention of the respondent that, upon the facts disclosed

by plaintiff's evidence, the contract price is not the correct rule of damages, and that no evidence was offered by plaintiff which would form a basis for the true measure of damages, by reason of the alleged breach of contract. A solution of the question presented involves the construction of sections 2302 and 2303 of the Civil Code. Section 2302: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is vested in him, is deemed to be the contract price." Section 2303: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be: * * * (2) If the property has not been resold in the manner prescribed by section 2151, the excess, if any of the amount due from the buyer under the contract over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof if the buyer had accepted it." No evidence was offered by plaintiff and appellant as to damages recoverable under subdivision 2, § 2303, and it is the contention of respondent that for that reason there is no evidence upon which the plaintiff can recover. Under the terms of the contract, it is specifically stipulated and agreed that the title to the property sold "shall remain and be vested in the party of the first part until sold by the party of the second part in the regular course of business or settled for as above, * * * and it is undisputed that the property in question never was sold by respondent in the regular course of business, nor has it ever been settled for according to the terms of the contract or in any other manner. It is respondent's contention therefore that, under the express terms of this contract, the title to the property never became vested in respondent. It is the contention of appellant that, under the provision of this contract, respondent became the purchaser of property then in its possession, and, having sold certain of the machinery in the ordinary course of business, no further act was necessary to vest the title to the property, and respondent should be held to have accepted the whole thereof under the contract. In

our judgment this contention is untenable for the reason that the undisputed evidence shows that the articles sold were actually paid for by respondent, in strict accordance with the terms of the contract, and it cannot now be contended that this transaction had the effect of vesting in respondent the title to the unsold portion of the machinery. By the express terms of the contract, appellant retained title to all of this property "until sold by party of the second part in the regular course of business or settled for as above," and it cannot be contended that the title to the property neither sold nor settled for became vested in respondent. The contract in question was made and to be performed under the provisions of these statutes, which entered into and became a part of the contract itself. We hold that buyers and sellers have an absolute right to contract with reference to the vesting of the title to the property sold, and that, under these statutes, the measure of damages for a breach of a buyer's agreement to accept and pay for personal property may be absolutely fixed by provisions of the contract under which the title to the property sold is to be vested in the purchaser or retained by the seller. If, under the contract, the title to the property sold is vested in the purchaser, the damages for the breach of the buyer's agreement to accept and pay for the property is the contract price. But if, under the contract, the seller shall choose, for any reason which seems good and sufficient to him, to retain the title in himself, as security or otherwise, the measure of damages is the excess, if any, of the amount due from the buyer under the contract, over the value of the property to the seller. Under such a contract, the measure of damages becomes a substantial part of the contract itself, and can no more be changed by the act or election of one party alone than can any other material provision. The mutual act and consent of both would be essential to such a change.

It is unnecessary for this court to attempt to explain the reasons which may have induced the lawmakers to enact this rule. It is sufficient that we find it so written. The provisions of these sections of our Civil Code appear to have been first formulated by the New York Code Commission, and were adopted and enacted

as the law in the early years of our territorial government, and have remained unchanged to this day. In its report to the Legislature of New York, in 1865, the Commission say: "In all this immense range of subjects, while it has been the general purpose of the commissioners to give the law as it now exists, they have kept in mind the injunction of the Constitution to 'specify such alterations and amendments therein as they shall deem proper.' In obedience to this command of the organic law, they have specified various alterations and amendments which they consider proper to be adopted." Whether these sections were originally intended to express the law as it then existed in New York, or were considered "alterations and amendments" proposed, is not material; nor would it serve any useful purpose to attempt to discuss the proposition. Whatever their source, or origin, they are now crystallized into fixed rules of law, which must control the rights of parties to contracts of purchase and sale of personal property. Parties may contract as they think will best serve their interests, with reference to the vesting of title to property made the subject of sale. But such contracts, when made, must be held binding and effective, until changed by mutual consent of the parties thereto.

Under this view of the law, there was no evidence offered at the trial by the plaintiff warranting a recovery of substantial damages against respondent in any sum, and the order of the trial court directing a verdict for the defendant was not prejudicial error, which would warrant a reversal of this judgment.

The order and judgment of the trial court are therefore affirmed.

McCOY, J., took no part in this decision. WHITING, J., dissents.