In the Matter of the Petition to Set Aside the Elections of Directors of GEORGE RINGLER AND COMPANY.

ANNA HACHEMEISTER et al., as Administrators with the Will Annexed of HENRY HACHEMEISTER, Deceased, et al., Appellants; GEORGE F. TROMMER et al., Individually and as Executors of WILLIAM G. RINGLER, Deceased, et al., Respondents.

Stock corporations — directors — General Corporation Law, § 32 — provision of charter requiring a director to be "the holder or owner of at least one share of stock" — election of director held invalid when it appears that stock was assigned for sole purpose of qualifying transferee and at once transferred in blank to true owner — effect of election to fill vacancies by de facto directors.

1. Where the by-laws of a corporation require a director to be "the holder or owner of at least one share" of its stock and it appears that stock has been transferred prior to an election for the sole purpose of qualifying the transferees as directors, but that

these shares had been immediately assigned back to the true owner in blank, their election to the office of director is invalid.

2. When a transfer of stock is made in good faith, and the transferee actually holds the stock during his incumbency of office, such transferee is a stockholder within the purview of the law and that fact is conclusive upon the inspectors of election both as to the right of these apparent holders to vote upon the stock, and as to their eligibility to the offices of directors or trustees. But the record of a transfer upon the books of the company is not binding upon the court in a proceeding under the statute (Gen. Corp. Law, § 32) to investigate the election of corporate officers which has expressly conferred the power and imposed the duty to make an investigation of the facts and give judgment accordingly.

3. The persons so elected were between themselves and the corporation never directors or trustees either in fact or in law. They became officers *de facto* only as to the public and third persons dealing with the corporation, and when they elected other directors to fill vacancies the persons so elected acquired no more right or title to the office than those who assumed without power or authority to elect them.

*Matter of Ringler & Co.*, 145 App. Div. 361, reversed.

(Argued November 20, 1911; decided January 9, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 9, 1911, which affirmed in part and reversed in part an order of Special Term setting aside the election of certain directors of the corporation George Ringler & Company, and denying an application to set aside the elections of certain other directors of said corporation.

On or about October 4th, 1910, Anna Hachemeister, individually and as administratrix with the will annexed of Henry Hachemeister, deceased, and J. Edward Jetter, as administrator of such decedent and as substituted trustee under his will, presented their petition to the Supreme Court under section 32 of the General Corporation Law, praying that the elections of certain directors or trustees of George Ringler & Company, a domestic corporation, be set aside upon the ground that those elected by the stockholders were not legally qualified for the office

because they were not stockholders in the corporation, as required by the by-laws; and also because two of them were elected to fill subsequently occurring vacancies in the board by the votes of directors or trustees who are said to have been thus disqualified.

George Ringler & Company is a domestic corporation which was organized in 1889 under the Manufacturing Company's Act of 1848 (chap. 40) for the purpose of manufacturing and dealing in malt liquors. Its capital stock is $600,000, divided into 6,000 shares which, at the time of the elections assailed in this proceeding, were owned in equal amounts by William G. Ringler, now deceased, and the estate of Henry Hachemeister, deceased. The by-laws of the corporation have always provided that "No person shall be a trustee who is not the holder or owner of at least one share in the capital stock of this company. * * * The transfer by any trustee of his entire stock in the company shall cause the forfeiture by said trustee of his rights as such, and such transfer shall be equivalent to a resignation of such trustee, and thereupon a new election shall be held to fill the place of such trustee in the manner hereinafter designated."

The election of trustees which is first challenged occurred at the stockholders' meeting held on October 30th, 1909. At that time William George Ringler was still alive. The following persons were then elected trustees: William G. Ringler, George F. Trommer, Arthur Strauss, Anna Hachemeister (one of the petitioners and the widow of Henry Hachemeister, deceased) and Isaac Kugelman. It is admitted that of these trustees thus elected, at least three, Trommer, Strauss and Kugelman, were not the owners of any stock in the company. It is true that their names appear upon the books of the company as stockholders, but only for the purpose of qualifying them to be elected trustees; and when they were elected they had divested themselves of the stock of which they appeared to be the owners of record. The

fact is that prior to the meeting at which they were elected, William G. Ringler had transferred to each of them five shares of the stock of the company, which were "at once transferred back in blank to Mr. Ringler by the said parties." It is also admitted that it had been the custom for Messrs. Hachemister and Ringler, the real owners of the stock, from time to time to transfer shares to various persons under the same arrangement for the sole purpose of qualifying them to become trustees.

Thereafter, and on January 23rd, 1910, William G. Ringler died, and George F. Trommer and George Ehret, Jr., were appointed his executors. On the following February 28th Ehret was elected a trustee in place of Ringler at a meeting of trustees at which the alleged disqualified trustees, Trommer, Strauss and Kugelman, were the only persons present. On the succeeding 4th of March John T. Wilson was elected a trustee in place of Anna Hachemeister by the votes of Trommer, Strauss, Kugelman and Ehret. Prior to Wilson's election his name appeared on the books of the company as a stockholder, but he was not in fact a stockholder, because he had been only colorably qualified by the same process as Trommer, Strauss and Kugelman before him.

The Supreme Court at Special Term granted the application of the petitioners so far as the three trustees, Trommer, Strauss and Kugelman were concerned, and set aside their election as trustees upon the ground that they were not eligible because they were not stockholders within the meaning of the by-laws of the company and the statutes. The application was denied, however, as to Ehret and Wilson upon the specific ground that the court had no power to interfere because the statute under which the proceeding was instituted only relates to elections by stockholders. Upon appeal to the Appellate Division the order of the Special Term was reversed in so far as it set aside the election of the three trustees, Trommer, Strauss and Kugelman, who were elected by the stockholders,

and affirmed as to the refusal to remove the other two, Ehret and Wilson, who had been elected by the board to fill vacancies. The present appeal is by the petitioners from the entire order of the Appellate Division.

*David Leventritt, Maxwell C. Katz* and *Otto C. Sommerich* for appellants. The Manufacturing Company's Act, under which George Ringler & Company was incorporated, required that a director must be the actual owner of stock and not merely a record holder thereof. The phrase "holder or owner" in section 4, article 4 of the by-laws, providing that no person shall be a trustee who is not at least the holder or owner of one share of the capital stock of the corporation, could only have meant at that time the actual *bona fide* beneficial owner thereof, and not merely the holder thereof on the books of the corporation divested of all legal title. (*People* v. *N. R. S. R. Co.*, 3 N. Y. Supp. 401; *C. Nat. Bank* v. *Colwell*, 132 N. Y. 250; *Matter of Elias*, 17 Misc. Rep. 718; *Sinclair* v. *Fuller*, 158 N. Y. 607; *Beardsley* v. *Johnson*, 121 N. Y. 224.) The word "stockholder," when applied to the provision of law requiring a director to be a stockholder, means, not only a stockholder upon the records, but a stockholder in fact. (*Kelly* v. *Third Ave. R. R. Co.*, 119 App. Div. 223; *I. & G. T. Co.* v. *Tod*, 180 N. Y. 215.) The use of the word "stockholder" in the Stock Corporation Law as re-enacted in the Laws of 1892, chapter 688, and again re-enacted by chapter 354 of the Laws of 1901, after the decision in the case of *Chemical Bank* v. *Colwell*, indicates that the legislature intended to use this expression in accordance with the judicial interpretation given to it in that case. (*C. Bank* v. *Colwell*, 132 N. Y. 250; *Pulitzer* v. *City of New York*, 48 App. Div. 6; *Hakes* v. *Peck*, 30 How. Pr. 104; *People ex rel. Outwater* v. *Green*, 56 N. Y. 466; *U. S.* v. *Gilmore*, 8 Wall. 330.) The by-laws having been passed prior to 1901, section 4 of article 4 of the by-laws cannot be considered as

permitting a person not a beneficial owner of stock to be qualified to the office of director. Such interpretation would mean that the stockholders in 1889 passed a by-law in direct contravention of the Stock Corporation Law, and such construction will not be presumed. (*Mandeville* v. *Reynolds*, 68 N. Y. 528.) A director must be a beneficial owner of stock in order to be qualified as such. (*D. W. C. Mfg. Co.* v. *Dougherty*, 62 Ohio St. 589.) The court erred in refusing to set aside the election of George Ehret, Jr., and John T. Wilson. (*People ex rel. Putzel* v. *Simonson*, 61 Hun, 338; *Matter of Northern Dispensary*, 26 Misc. Rep. 147; *Matter of E. S. Supreme Lodge*, 118 App. Div. 616; *People ex rel.* v. *Sturges*, 21 Misc. Rep. 605.)

*W. H. Van Benschoten* and *Charles H. Edwards* for respondents. The only election of a corporation is the election had by the stockholders. A corporation can only be composed of its members or stockholders and the filling of a vacancy by the board of directors cannot be and is not an election of a corporation. The court, therefore, has no power to inquire into or to establish or to order concerning the filling of a vacancy in a board of directors by the board of directors themselves. (*Wickersham* v. *Brittan*, 93 Cal. 34; *People* v. *Ahearn*, 196 N. Y. 241.) The trustees sought to be ousted in this proceeding were properly qualified because at the time of their election at least one share of stock stood in their names respectively on the books of the corporation. (Endlich on Interp. of Statutes, § 387; *Regina* v. *P. L. Comrs.*, 6 A. & E. 56; *Com. Bank* v. *Kortwright*, 22 Wend. 348; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *McNeill* v. *T. Nat. Bank*, 46 N. Y. 325; *Johnson* v. *Underhill*, 52 N. Y. 203; *Campbell* v. *A. Z. Co.*, 122 N. Y. 455; *Smith* v. *People*, 47 N. Y. 339; *State* v. *Leete*, 16 Nev. 242; *Matter of Argus Printing Co.*, 12 L. R. A. 789; *Shellington* v. *Howland*, 53 N. Y. 371; *Matter of Leslie*, 58 N. J. L. 610.)

WERNER, J. Until the year 1901, the statutes of this state relating to the affairs of ordinary business corporations provided that the directors or trustees of such companies should be stockholders to the extent at least of one share of stock. It has been judicially declared that the legislative policy underlying this provision of the statutes was to commit the management of corporations to those only who have a personal pecuniary interest in the conduct of their business. (*Chemical Nat. Bank* v. *Colwell*, 132 N. Y. 250; *Sinclair* v. *Fuller*, 158 id. 607.) This was the state of the law when the George Ringler & Company corporation was organized. We may assume that it was in view of this declared purpose of the statute, and of the policy underlying it, that the organizers of this corporation provided in its by-laws that " No person shall be a trustee who is not a *holder or owner* of at least one share of stock," and that a transfer by a trustee of his entire stock in the company should work a forfeiture of his office and be equivalent to a resignation. In 1901 the legislative policy in regard to this class of corporations was changed to the extent of providing that directors (trustees) shall be stockholders, unless otherwise provided in the certificate of-incorporation or by-laws adopted at a stockholders' meeting. (L. 1901, ch. 354, amending former section 20 [now sec. 25] of the Stock Corporation Law.) As the law now stands, therefore, directors need not be stockholders if the organizers or stockholders of a stock corporation so provide, either in its certificate of incorporation or its by-laws.

This brief statement of the law relating to the qualifications of directors or trustees of stock corporations brings into plain view the *status* of the three persons, Trommer, Strauss and Kugelman, who were elected at the stockholders' meeting of the Ringler Company held on October 30th, 1909, and whose eligibility to hold the office of trustees therein is first challenged. That they were not at that time beneficial owners of any stock in the corpo-

1912.] Opinion, per WERNER, J. [204 N. Y.]

ration is frankly admitted by their learned counsel. But the difficulty reaches down deeper than that, for they were, in fact, not stockholders at all. It is true that five shares of stock had been transferred to each of them prior to their election for the sole purpose of qualifying them, but these shares had been immediately assigned back to the true owner in blank. Thus their only claim to be stockholders rests upon the fact that their names appeared upon the books of the company, and still so appear as record holders of stock. The question to be determined, therefore, is whether an apparent stockholder of record, who is not such in fact, is eligible to the office of director or trustee, under the statute and by-law to which we have referred.

We are not disposed to construe either the statute or the by-law so strictly as to inhibit the transfer of stock for the express and avowed purpose of qualifying the transferee for election to the office of director or trustee. That might be altogether too drastic a remedy for such evils as are complained of in the case at bar. And so, on the other hand, we cannot uphold the elections of Trommer, Strauss and Kugelman, who were not stock-holders at all, without ignoring the letter and spirit of the statute and the by-law. When we consider the provisions of the statute and the by-law over against the very general practice of qualifying persons for the offices of directors or trustees in stock corporations, it is going quite far enough to hold that when a transfer of stock is made for that purpose in good faith, and the transferee actually holds the stock during his incumbency of office, such transferee is a stockholder within the purview of the law. But that is not the case at bar. When Trommer, Strauss and Kugelman took their respective assignments of stock it was with no thought of holding it even until they were elected, for they at once retransferred the stock to the owner. It was simply a fictitious transfer by which it was thought to comply with the naked letter of

the law. Thus they were never qualified to become
directors or trustees, because they were not stockholders
when elected; and the result would have been the same
if their retransfer of the stock had not been made until
after their elections, for the by-law of the company, in
that event, would have automatically vacated their
offices. Their names appeared upon the books of the
company as stockholders, to be sure, and that was doubt-
less conclusive upon the inspectors of election both as to
the right of these apparent holders to vote upon the stock,
and as to their eligibility to the offices of directors or trus-
tees. But that record is not binding upon the court in
such a proceeding as this, when the statute has expressly
conferred the power and imposed the duty to make an
investigation of the facts and give judgment accordingly.
(*Matter of Strong* v. *Smith*, 15 Hun, 222; affd., 80
N. Y. 637.) The situation as to these three, Trommer,
Strauss and Kugelman, may, therefore, be briefly recapit-
ulated as follows: Although at the time of their election
the statute had been so amended as to permit non-stock-
holders to be directors or trustees in stock corporations,
that permission was subject to the condition precedent
that either the certificate of incorporation or the by-laws
of the corporation must so provide. Here there was no
such provision and we must, therefore, assume that there
was no intention to change the corporate policy expressed
in the original by-law which, at the time of its adoption,
was in consonance with the statute as it then existed.
We hold, therefore, that Trommer, Strauss and Kugel-
man were not stockholders when elected, and that they
were not then eligible to the offices of directors or trus-
tees. Despite the cogent arguments in the prevailing
opinion at the Appellate Division, based upon considera-
tions of practical business convenience, we can see no
good reason in law or policy for holding otherwise. It
seems to us to be going quite far enough to permit a per-
son to become qualified for the office of director or trustee

in a stock corporation by the mere transfer to him of a sufficient number of the shares of its stock, if he actually takes and holds it during his term of office.. To go further would be to place a premium upon fictitious and colorable transactions designed in form to comply with the law and in fact to defeat its commands. The conclusion follows that the Special Term was right in setting aside the election of Trommer, Strauss and Kugelman, and that the Appellate Division erred in reversing the order to that effect.

With reference to the qualifications of Ehret and Wilson, we are confronted with a different question. They were elected to fill vacancies in the board. Ehret was elected by the votes of Trommer, Strauss and Kugelman, there being no other directors present. Wilson was elected by the votes of these three and the vote of Ehret. In respect of this branch of the inquiry, the first thing we have to consider is whether the statute authorizes a judicial investigation into elections made by a board of directors or trustees to fill vacancies, as distinguished from elections for full terms by the stockholders. Concretely stated, the inquiry is whether the court at Special Term had the power to inquire into the eligibility of Ehret and Wilson. The statute provides that, "The Supreme Court shall, upon the application of any person or corporation aggrieved by or complaining of *any* election of any corporation or any proceeding, act or matter touching the same, * * * forthwith and in a summary manner hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matters or causes of complaint, and establish the election or order a new election, or make such order and give such relief as right and justice may require." (General Corporation Law, section 32; Cons. Laws, ch. 23.) The respondent contends that this section was not intended to vest the court with power to inquire into elections or appointments by a board of directors. The argument is

that the language of the statute relates only to elections of the corporation, that is, elections by the stockholders. We shall briefly give the reasons why we think this view of the scope of the statute is too narrow. The statute was clearly enacted in order that courts might have power to proceed in a summary manner to test the title of officers of corporations without recourse to the more cumbersome proceeding under the writ of quo warranto. We are convinced that its history indicates a legislative intent not to confine its operation to corporate elections by stockholders, but to extend it to any corporate election. As originally enacted by chapter 325, L. 1825, sec. 9, it provided that, "It shall be the duty of the Supreme Court, upon the application of any person or persons or body corporate, that may be aggrieved by, or may complain of, any election, or any proceeding, act or matter, in or touching the same," to proceed, etc. As thus enacted it was carried into the Revised Statutes. (1 R. S. 603, sec. 5.) It is to be noted that the words " of any corporation " which appear in the present section after the words " of any election " were not in the statute until it was incorporated into the General Corporation Law in 1890. (Ch. 563, sec. 15.) It is a fact of common knowledge that it was a part of the scheme of this comparatively recent revision of the laws to divide corporations into separate classes, such as business corporations, stock corporations, transportation corporations, etc. The revisers placed in the General Corporation Law all the provisions which they deemed applicable to all classes of corporations. The section with which we are now dealing, as it existed in the Revised Statutes (1 R. S. 605, sec. 11), did not apply to all corporations, and that appears to have been the reason why the revisers changed it by adding after the words " of any election " the additional words " of any corporation," so as to make it in terms clearly applicable to all corporations. This history of the statute would seem to indicate that these added words " of any corporation " were not

intended to limit the meaning and effect of the earlier phrase "any election," but rather to broaden the statute so as to give the court power to investigate elections in any of the corporations belonging to either of the classes enumerated in the revised corporation laws of 1890. We are, therefore, inclined to think that the Supreme Court now has the power to inquire into any corporate election of·directors or officers, whether the same is made by the stockholders or by trustees or directors to fill vacancies.

There is an early case (*Matter of Mohawk & Hudson R. R. R. Co.*, 19 Wend. 135) which seems to hold the contrary view. It arose under this statute when it was a part of the Revised Statutes, but its facts easily differentiate it from the case at bar. There the election of directors of the corporation was attacked on the ground, among others, that the inspectors of election had not been properly sworn. It appeared that they had been appointed by resolution of the board of directors, and it was held that they were *de facto* officers whose acts were valid, because it appears to have been assumed by all concerned that the resolution under which they were appointed was passed pursuant to a standing by-law. Having decided that the inspectors were officers *de facto*, Judge COWEN went further and stated that as the statute requiring inspectors of election to take an oath of office was merely directory in its terms, without specifying the time within which the direction was to be complied with, a failure to take the oath was not an omission which nullified their election. It is to be observed, moreover, that there is a very radical difference between a *de facto* inspector of election, who is a mere teller in the counting of votes, and a *de facto* director, whose vote is relied upon to create a director *de jure*.

Next in order is the question whether Ehret and Wilson were properly elected so as to become directors or trustees of the Ringler Company, not merely *de facto* but

*de jure.* These two, it will be remembered, were elected by different means than the other three and at separate times. Trommer, Strauss and Kugelman were elected by the votes of stockholders at a meeting held in October, 1909. Ehret was elected at a meeting of the board of directors held on February 28th, 1910, receiving the votes of Trommer, Strauss and Kugelman and no others. Wilson was elected at a meeting of the directors held March 4th, 1910, receiving the votes of Trommer, Strauss, Kugelman and Ehret, and no others.

Thus the proceeding presents the peculiar condition that two directors or trustees, elected to fill vacancies by the votes of three others who assumed to act as trustees or directors but who were themselves disqualified to hold the office, are now claiming to be directors *de jure.* Reduced to its simplest terms, the argument of the respondents under this head is that although the three directors or trustees, Trommer, Strauss and Kugelman, may be regarded merely as *de facto* officers, they had the power while in office to create directors or trustees *de jure* to fill vacancies.

The *de facto* doctrine is one of those legal makeshifts by which unlawful or irregular corporate and public acts are legalized for certain purposes on the score of necessity. It "was introduced into the law," said Chief Judge BUTLER in the leading case of *State* v. *Carroll* (32 Conn. 449), "as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers." The reason of the rule upon which this policy is founded is stated to be that "third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office, even so far as to see that he has color of title to it by virtue of some appointment or election. If they see him publicly exercising its authority, if they ascertain that this is generally acqui-

esced in, they are entitled to treat him as such officer, and, if they employ him as such, should not be subjected to the danger of having his acts collaterally called in question." (*Petersilea* v. *Stone*, 119 Mass. 465; *Norton* v. *Shelby County*, 118 U. S. 425, 441; 3 Thompson on Corporations, sec. 3893.) And the reason of this rule of necessity would seem to imply that "if the title of the assumed officer be directly assailed by the state, in a proper proceeding, it will be necessary for him to show himself something more than an officer in fact," so that when an assumed officer undertakes to enforce in a direct proceeding "rights which belong only to an officer *de jure*, it may be necessary for him to show himself to be such." (Mechem on Public Officers, sec. 317.) If Ehret and Wilson are, therefore, merely *de facto* directors or trustees, having no higher or better title than Trommer, Strauss and Kugelman, who assumed to elect them, they may be ousted from their offices in this proceeding. (*Matter of Sherrill* v. *O'Brien*, opinion by CULLEN, Ch. J., 188 N. Y. 213.) And if, on the other hand, Ehret and Wilson are directors or trustees *de jure*, their title is good, notwithstanding the invalidity of the title of those who assumed to elect them.

Dillon in his work on Municipal Corporations (Vol. 2 [5th ed.], section 519) says: " It has been argued that, as a *de facto* council or board does not have title *de jure*, it cannot by its acts confer a greater or more valid title to office upon its appointee than it has itself, and that, therefore, a person appointed to office by a *de facto* officer or by a *de facto* board is not an officer *de jure* but only an officer *de facto*. But the weight of authority denies the existence of any such exception to the general rule that the acts of a *de facto* board or officer are valid and effectual both as concerns the public and as concerns a third party. In making an appointment pursuant to statutory authority, the power of appointment is exercised rather by the office upon which it is conferred than by the incumbent.

In other words, the power of appointment is incident to the official authority of the incumbent, and the courts have held that no reason exists for making an exception in the case of its appointees. Accordingly under the decisions, one appointed to office by a *de facto* officer, or by a *de facto* board, becomes entitled to the office to which he is appointed *de jure*, and is not a mere officer *de facto*." The learned author cites as authorities for this view a long list of decisions, all arising in other states. (*Attorney-General ex rel. Fuller* v. *Parsell*, 99 Mich. 381; *Brady* v. *Howe*, 50 Miss. 607; *Attorney-General* v. *Megin*, 63 N. H. 378; *State ex rel. Bownes* v. *Meehan*, 45 N. J. L. 189; *State ex rel. Dugan* v. *Farrier*, 47 N. J. L. 383; affd., 48 N. J. L. 613; *Brinkerhoff* v. *Jersey City*, 64 N. J. L. 225; *Ellis* v. *North Car. Inst.*, etc., 68 N. C. 423; *People* v. *Staton*, 73 N. C. 546; *State ex rel. Whitbeck* v. *Alling*, 12 Ohio, 16; *State ex rel. Newman* v. *Jacobs*, 17 Ohio, 143; *State ex rel. Herron* v. *Smith*, 44 Ohio St. 348.) This array of cases is too long for a detailed discussion. We have examined them sufficiently to ascertain that they are all apparently planted upon the accepted doctrine that as to the public and third persons dealing with public or corporate officers or their appointees, the acts of such officers or appointees are valid. In such cases it matters little whether the officer is such *de facto* or *de jure*, for in either event the law recognizes his acts as binding. But if it is true, as suggested by Judge Dillon, that the office and not the officer is the appointing power, it would logically follow that whenever the office lawfully exists, all appointments and elections made by any incumbent, no matter how invalid his title, would be *de jure* appointments or elections. It seems to us that this is carrying the *de facto* doctrine beyond the reason upon which it rests. It is certainly more logical to hold that in cases where public convenience or the rights of innocent third persons require that the acts of those who are permitted to serve as public officers must be held

valid, the *de facto* doctrine will be applied, and that in all other cases where the question arises in a direct proceeding it will be decided according to the fact. It is in terms a paradox to say that cne who owes his election or appointment to an unlawful usurpation of power by another, holds his appointment or election *de jure*. As between themselves, the appointer and the appointee stand upon the same footing. If the former is merely an officer *de facto*, the latter falls into the same class. That does not give either of them a good title to office. The classification, as we have seen, is merely a legal fiction which the law invokes for the protection of third persons and the public. So far as their own rights are concerned, both appointer and appointee are mere intruders, subject to deposition in the proper proceeding.

In any event the foregoing rule referred to by Judge Dillon seems never to have been the law of England, for the courts there have held that a judgment of ouster against the *de facto* incumbent is admissible to impeach the title of his appointees and is conclusive as against them, except for fraud in obtaining it. (*King* v. *Lisle*, Andrews, 163; *Rex* v. *Grimes*, 5 Burr. 2601; *King* v. *Hebden*, Andrews, 391.) And the English rule, which seems to have been approved by this court in *People ex rel. Gilchrist* v. *Murray* (73 N. Y. 535, 538) has also been applied in several cases in the Supreme Court of this state. In *Mayor, etc., of N. Y.* v. *Flagg* (6 Abb. Pr. 296, 302) there were adverse claimants to a municipal office. Upon an application for an injunction restraining the comptroller from paying a salary to either of the contestants pending the proceedings to try the title, Mr. Justice SUTHERLAND wrote an opinion in which he clearly pointed out the reasons why the acts of a *de facto* officer may be valid as to the public and third persons, and invalid against him and his appointees. "The distinction," said the learned justice, "between an officer *de facto*, and a mere usurper has arisen, and is recognized in the law, for the benefit

and protection of third persons, and not for the benefit of the officer, who is presumed to know whether he has been legally appointed or elected. An officer *de facto* merely, without the legal right, has himself the benefit of a legal recognition as such, only in suits to which he is not a party. *As to himself*, he is a mere usurper, though an officer *de facto* as to third persons interested in his acts. The rule of law, which makes him an officer *de facto* as to such third persons, confers on him no rights, and absolves him from no responsibility for his affirmative claimed acts or proceedings. As to himself, such acts and proceedings are a mere nullity. Without right himself, he cannot confer any on others. His appointment of deputies or subordinates, as to himself and them, would be as void as any other colorable official act. It might make them severally officers *de facto* as to third persons, but could give them no better or greater right to institute, as such, any affirmative action or proceeding than he himself had or has, as an officer *de facto*. The right and title of his appointee rests on his own right and title, and neither can recover the salaries or the fees, and the emoluments of the office, without proof that he is an officer *de jure*, and duly qualified, and entitled to act." (Citing *People ex rel. Bush* v. *Collins*, 7 Johns. 549, 551; *Town of Plymouth* v. *Painter*, 17 Conn. 585; *Fowler* v. *Bebee*, 9 Mass. 231; *Gilmore* v. *Holt*, 4 Pick. 258; *Riddle* v. *Co. of Bedford*, 7 Serg. & R. 392; *Neale* v. *Overseers*, 5 Watts, 538.)

In the more recent case of *People ex rel. Steinert* v. *Anthony* (6 Hun, 142) the relator was appointed clerk of a District Court, by one McGuire, who entered the office of justice of that court under a certificate of election, which was later set aside and McGuire declared a usurper of the office. The question was whether Steinert, the relator, or Anthony, the respondent, was entitled to the clerk's salary, and that depended upon the question whether McGuire had been legally elected to the office of

justice.   In that case Mr. Justice LAWRENCE followed the decision in *Mayor, etc., of N. Y.* v. *Flagg* (*supra*) and the whole argument was summed up in this paragraph: "If McGuire had no title to the office of justice, it seems clear that he could not confer a title to another office, the right to appoint to which was conferred on *the justice* not upon one who simply asserted that he was such justice."

The early case of *People ex rel. Hodgkinson* v. *Stevens* (5 Hill, 616) has sometimes been referred to as an authority, deciding that the appointee of an officer *de facto* holds his position *de jure*.   That was a proceeding under a writ of mandamus to compel the delivery of books and papers relating to the office of clerk of the city of Brooklyn.   The election of the clerk depended upon the validity of the election of an alderman whose vote figured in the election of the clerk.   All that was actually decided in that case was that the title to the office of alderman could not be tried in a collateral proceeding to compel the delivery of books and papers.

Leaving the discussion of the authorities, we return to the inquiry whether Ehret and Wilson had any better title to office than Trommer, Strauss and Kugelman, who assumed to elect them.   The latter, as between themselves and the corporation, were never directors or trustees either in fact or in law.   They became officers *de facto* only as to the public and third persons dealing with the corporation.   By their act, that is by their votes, they assumed to elect Ehret and Wilson to fill vacancies then existing in the board.   As to the public and third persons, Ehret and Wilson thus became directors or trustees *de facto*, but we think that as to the corporation and its stockholders they acquired no more right or title to the office than the three, Trommer, Strauss and Kugelman, who assumed, without power or authority, to elect them.   They were all in office under mere color of title which has been defined " to be that which in appear-

ance is title, but which in reality is no title." (*Wright* v. *Mattison*, 18 How. [U. S.] 50.) We think they must all stand or fall together, and as the election of Trommer, Strauss and Kugelman was clearly invalid, the attempt by these three to elect Ehret and Wilson is equally illegal as regards the corporation and its stockholders. To hold otherwise would produce the incongruous result that mere intruders into a corporate board could legally elect others of their own choosing, who in turn could accept the resignations of the intruders and legally elect their successors, thus usurping the powers which of right belong to the real stockholders, who by such means might be excluded from all participation in the affairs of the corporation. The courts should not lend themselves to such a consummation unless the letter of the law plainly commands it, and we can find no such command.

The counsel for the respondents suggests that, even if this court should agree with the Special Term as to Trommer, Strauss and Kugelman, the order is too broad, because it is capable of a construction which prohibits either of these men from acting as trustee or director under any election. We think that the order, taken as a whole, shows upon its face that it refers only to the invalid election which is attacked in this proceeding, and that it does not purport to forbid the election or service of either of them under any election for which they may appear to be properly qualified.

The order of the Appellate Division should be reversed; the order of the Special Term modified so as to set aside the election of all the directors of George Ringler & Co. named in the petition, with costs to appellant in all courts.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Ordered accordingly.