PEDRO VERGNE ROIG ET AL., Petitioners, *v.* SUPERIOR COURT OF MAYAGÜEZ, A. FIOL NEGRÓN, JUDGE, Respondent; CERVECERÍA REAL, INC., and GABRIEL C. SOLER, Interveners.

No. 2079. Argued July 2, 1954.—Decided August 3, 1954.

*Charles R. Hartzell, Rafael O. Fernández* and *José Sabater* for petitioners. *Amador Ramírez Silva* and *Enrique Báez García* for interveners.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Cervecería Real, Inc. is a corporation engaged in the

manufacture and sale of beer and malt. On December 16, 1952 the stockholders of the corporation, held an annual meeting, the validity of which is not at issue here, where the stockholders Alberto Inocente Álvarez, Lydia Fajardo de Álvarez, Jaime Annexy Iglesias, Vicente M. Ydrach and José A. Ponce were elected directors of the corporation. On that same date the Board of Directors met and authorized the President, Alberto I. Álvarez, to contract the services of Pedro Vergne Roig, as general manager of the corporation for a term of three years and on that same day the contract was executed.

On December 14, 1953, the date fixed in the by-laws or regulations of the corporation for the annual meeting of stockholders, the same was commenced and held in the presence and with the participation of a group of stockholders who held a total of 1658 shares, the total number of outstanding shares being 5,548. According to the stock books the spouses Alberto I. Álvarez and Lydia Fajardo de Álvarez had 1713 shares each in their own name, that is, 3,426 shares together. They neither appeared nor took part in the meeting, in compliance with a judicial order rendered in a litigation pending between them. At any rate, at the annual meeting of December 14, 1953, less than $4/5$ of the outstanding shares of the corporation was represented and therefore, no quorum was constituted as required by § 2 of Article 1 of the By-laws of the corporation, which reads:

"Sec. 2. QUORUM. Except as hereinafter provided, the presence in person or by proxy of the holders of $4/5$ of the outstanding stock entitled to vote shall be necessary to constitute a quorum for the transaction of business, but a lesser number *may adjourn* to some future time not less than nor more than ten days later, and the Secretary shall *thereupon* give at least five days notice by mail to each stockholder entitled to vote who was absent from such meeting. In the event that quorum is not constituted in consequence of the second notice, the meeting *shall adjourn* to some future date not less than nor more than fifteen days later and the Secretary shall thereupon give at

least five days notice by registered mail with acknowledgment receipt to each stockholder entitled to vote who was absent from such meeting. The Secretary shall in this last notice inform the stockholders that any number of stockholders present on such date will constitute quorum for transaction of business."

Notwithstanding the fact that at the annual meeting of December 14, 1953, the required quorum was not constituted and that two of the stockholders present raised the question of quorum, the holders of a majority of the 1658 shares represented therein held the meeting, overruling the question of quorum and electing the stockholders Alberto I. Álvarez, Lydia Fajardo de Álvarez, Mario Escudero, José A. Ponce and Gabriel C. Soler as directors of the corporation. The meeting was closed without adjourning to some future date. Some of the stockholders, who are the interveners herein, thereafter contested this meeting in writing.

Immediately after the meeting, three of the "directors" elected, to wit, Gabriel C. Soler, Mario Escudero and José A. Ponce, met and appointed Gabriel C. Soler general manager of the corporation to take possession of such office immediately.

On December 19, 1953, the Secretary of the corporation, Enrique Córdova Díaz, sent the following notice to the stockholders:

"I hereby summon you as a stockholder of Cervecería Real, Inc. for the regular annual meeting of stockholders to be held on December 24, 1953, at the main office of the corporation in Mayagüez, Puerto Rico, at 2 P. M. of said day. This meeting is called pursuant to the By-laws of the corporation inasmuch as there are doubts as to the regular annual meeting of stockholders held on December 14, 1953, insofar as quorum is concerned."

On December 24, 1953, a second meeting was held. Again there was no quorum, since only 1438 shares were represented inasmuch as the aforesaid judicial order was still in force. In that meeting the stockholders present ratified the agree-

ments of the meeting of December 14, including the election of the directors, and then the stockholders present therein *adjourned* the meeting to January 8, 1954. On December 26, the Secretary of the corporation issued, and sent on December 30, a notice calling the stockholders to a meeting on January 8, 1954, it being stated in the notice that "pursuant to the by-laws of the corporation, any number of stockholders present at this meeting shall constitute quorum for the transaction of business." Prior to January 8, 1954, the Mayagüez Part of the Superior Court had already set aside its former order restraining Álvarez and Lydia Fajardo de Álvarez from voting at the meeting. The impediment set aside, Álvarez appeared at the meeting of January 8 and voted in representation of 1713 shares. The stockholders present therein on January 8 were holders of or represented 3173 shares. The absent stockholders, interveners herein, challenged the validity of that meeting in writing as they had done previously with respect to the meetings of December 14 and December 24, 1953, because of failure to comply with the provisions of the by-laws. The stockholders who met on January 8 overruled said challenge and proceeded to elect the directors who were stockholders Alberto I. Álvarez, Lydia Fajardo de Álvarez, Jaime Annexy Iglesias, Mario Escudero and José A. Ponce. After the meeting, directors Álvarez, Escudero, and Ponce met and appointed Álvarez as President of the corporation, Escudero as Vice President, and Lydia Soler Fajardo as Secretary, and they also appointed Gabriel C. Soler to the office of general manager of the corporation.

When Soler attempted to take possession of the office to which he had been appointed, he was prevented from so doing because Pedro Vergne Roig, who had been previously appointed by the former Board of Directors for that same position, refused to surrender possession of the plant, properties, books, seal and documents of the corporation. An

action for injunction was then filed in the Mayagüez Part. against Pedro Vergne Roig in which Cervecería Real, Inc. and Gabriel Soler appeared as plaintiffs. The complaint alleges, in brief, that on January 8, 1954, the Board of Directors of the corporation had appointed Soler as general manager for a one-year term, which position was occupied, as a matter of fact, by defendant Vergne Roig; that the corporation and co-plaintiff Soler requested Vergne Roig to surrender the office to Soler as well as the industrial plant, offices, documents, funds and other real and personal property of the corporation, but Vergne Roig refused to do so and insisted on discharging his position and retaining all the aforesaid real and personal property of the corporation; that Vergne Roig's attitude constitutes an act of disturbance and dispossession *of the property* of the plaintiff corporation and that if Vergne Roig continues in charge of the administration of the corporation's business, the latter is exposed to serious damages in its business, inasmuch as Vergne Roig might commit acts of sabotage. The complaint prays for a judgment ordering Vergne Roig to refrain from disturbing plaintiff in the free administration of its business and to surrender the industrial plant, as well as the offices, documents, funds and other real and personal property of the corporation to co-plaintiff Gabriel C. Soler "who is the only person authorized by the corporation to keep all the real and personal property of the corporation" and ordering Vergne Roig to refrain from continuing in the discharge or the attempt to discharge the position of general manager, letting the corporation assume, through Soler, the administration of its business.

Defendant Vergne Roig appeared and alleged, in brief, that Soler's appointment was illegal and that the board which appointed him was an illegal board, setting forth the facts we have pointed out to prove said illegality. A group of stockholders who were absent at the three meetings of December 14 and 24, 1953, and of January 8, 1954, and who

had challenged the validity of those meetings asked leave to intervene as defendants in the injunction proceeding. Plain-tiffs consented, and their intervention was granted. In their answer, the interveners set up the same allegations as Vergne Roig, with respect to the illegality of Soler's appointment as general manager and with respect to the illegality of the Board of Directors which appointed him. On January 9, that is, on the same date the complaint was filed, all the parties involved in the litigation signed a stipulation whereby they agreed "to settle their controversy concerning the possession of the properties of the corporation and the position of general manager of said corporation by way of an injunction proceeding to be filed in the Mayagüez Part of the Superior Court of Puerto Rico, which proceeding shall be filed today by the interested parties of the second part."

The case was heard, and the Mayagüez Part rendered judgment sustaining the complaint and ordering Vergne Roig to surrender his position and the properties of the corporation to Soler and prohibiting Vergne Roig from continuing in the exercise of the functions of his office and enjoining Vergne Roig and the interveners from performing any act that might prevent the corporation, through Soler, from taking charge of its properties and business. In its conclusions of law, the lower court held that the Board of Directors elected on January 8, 1954, "has the control and management of the matters and business of Cervecería Real, Inc. and that they represent the corporation in that capacity"; that the Board had appointed Soler as general manager and had the right, which it exercised, to remove Vergne Roig upon appointing Soler to his position; that the corporation has the right to the free administration of its business through the board elected on January 8, 1954, and through the new manager Soler, it being therefore entitled to remove Vergne Roig; that it is unnecessary to consider or determine the validity or illegality of the Board of Directors elected on January 8, 1954, "inasmuch as the directors thus

elected may be considered at least as de facto directors of the corporation and as such their acts are valid insofar as the corporation and its stockholders and employees are concerned," and that such de facto directors, elected at the meeting of January 8, cannot be collaterally attacked in an injunction proceeding.

Vergne Roig and the interveners, petitioners herein, have appealed from said judgment to this Court, filing also a petition for certiorari. We issued the corresponding writ, and we now conclude that the judgment challenged in this certiorari proceeding must be annulled and set aside.

■■ At the outset we must dispose of a preliminary question. The petitioners herein, defendants in the action of injunction, (a group of stockholders backing Vergne Roig) allege that the injunction is not the proper remedy to settle controversies between rival groups of directors, involving the legality of the directors' election. Irrespective of the fact that in the trial court all the parties stipulated that their controversy should be settled in an injunction proceeding, we shall consider the question on the merits. It is true that, as a general rule, a court of equity has no inherent power to consider, by means of an injunction proceeding, contests between rival boards of directors and officers with respect to the validity of the election and appointment of such directors and officers, injunction not being generally the proper remedy to try the title to such an office. 13 Am. Jur. 861, 866, §§ 874, 882; Cook, *Corporations*, 6th ed., Vol. 2, pp. 1686, 1687, § 618; Fletcher, *Cyclopedia of Corporations*, permanent ed., Vol. 2, p. 132, § 367. On the other hand, if the action for injunction is based on other grounds inherent in such an action of injunction, and the questions concerning the validity of such elections are merely incidental to those grounds which constitute the main relief sought, the action for injunction then lies even if it is necessary to determine the incidental question regarding the validity of such elections or appointments. 13 Am. Jur.

861; Fletcher, *op cit.*, § 368, pp. 134, 135; *Milasinovich* v. *Serbian Progressive Club*, 84 A. 2d 571; 100 *Pa. L. Rev.* 898, 899. Petitioners herein pray for the possession and management of the affairs of a corporation, and of certain specific property; they allege acts of disturbance and dispossession; they seek the transfer of the management of a business and they allege that the corporation might suffer serious damages through sabotage, if plaintiffs' petition is not granted. Such grounds are appropriate in an injunction proceeding and if, incidentally it is necessary to consider questions concerning the validity of corporate meetings and appointment of officers, that should not defeat the primary judicial power already acquired. It is more convenient to subordinate procedural technicalities in order that the court may consider the intrinsic merits of the questions raised.

 The Mayagüez Court held that it was unnecessary to determine the validity of the meeting of January 8, 1954, and therefore, the validity of the meetings of December 14 and December 24, 1953, because as a matter of fact, a meeting had been held on January 8, 1954, and as a matter of fact, a board of directors had been elected therein, where a majority of the directors had appointed Soler as general manager; that in view thereof, the directors elected on January 8 were and are de facto directors, "and as such their acts are valid insofar as the corporation and its stockholders and employees are concerned," and are binding on the corporation and, as de facto directors, their *status* and the validity of their positions can not be collaterally attacked in this proceeding. However, the circumstances of this case offer several unsurmountable obstacles to the application herein of the doctrine of "de facto officers."

The doctrine regarding "de facto officers" of a corporation and the fact that their acts are binding on a third person is introduced into the laws as a matter of public policy and necessity. When through a reasonably continuous

period of time, specific persons *have acted de facto* as officers of corporation and by virtue of .such acts, *which have not been publicly challenged by the corporation, third persons* and the public are led to believe that such persons are actually corporate officers, the corporation is responsible to said third persons for the acts of those de facto officers because in order to achieve stability and a sense of confidence in the transaction of corporate affairs, in the eyes of the public, the corporation must necessarily act through certain officers, and third persons and the public should not be compelled to continually inquire as to the legality of the *status* of such apparent officers, but rather said third persons should be entitled to rely on appearances, the corporation being estopped from denying or evading the consequences of those acts implicitly consented by the corporation by virtue of its acquiescence to the continuation of such acts and appearances. Fletcher, *Cyclopedia of Corporations*, p. ed., Vol. 2, p. 142 *et seq.* §§ 372 and 374, p. 159 *et seq.*, § 383; 13 Am. Jur. 861, 862, §§ 876, 877.

The doctrine of "de facto corporate officers" covers only the relations between those officers and third persons, to establish the obligations of the corporation to those third persons. 13 Am. Jur. 862; Fletcher, *op. cit.* pp. 144, 148, 159; 19 C.J.S. 76, 77, § 739; *Mortgage Land Inv. Co.* v. *McMains,* 215 N. W. 192; *Lazenby* v. *Henderson,* 135 N. E. 302. But that doctrine is not applicable in contests between rival boards of directors, or between rival groups of officers, or in contests between the corporation or its stockholders and a group of directors, the acts of the so-called de facto officers not being binding as to conflicting interests within the corporation. 19 C.J.S. 76, 77; *Ellsworth Woolen Mfg. Co.* v. *Faunce,* 10 Atl. 250; *`Stratton Mass. Gold Mines Co.* v. *Davis,* 111 N.E. 375; *Schmidt* v. *Mitchell,* 41 S. W. 929; *Mortgage Land Inv. Co.* v. *McMains, supra;* Fletcher, *op cit.,* p. 166, § 388. De facto directors can not, *against the corporation itself,* delegate powers which they themselves do not

possess, or create, by appointment, de jure officers. *Stratton Mass. Gold Mines Co.* v. *Davis, supra; In re Ringler,* 97 N. E. 593. When the corporation or its stockholders, or the real officers, are the ones who are challenging the de facto officers, the judicial investigation concerns the reality of the juridical situation and not its appearance. The policy underlying the de facto doctrine is not applicable to the interested parties or to the members of the corporation. Third persons must not have the burden of inquiring into the integrity and legality of the title of the apparent officers with whom they make contracts, inasmuch as they are not in an adequate position to carry out such investigation before signing contracts, and that would only tend to retard the signing thereof. But the stockholders and the parties interested in the corporation and the legal directors are not only in a position to know the real situation without further investigation, but also as a rule they have the right and the duty to protect the corporation against the acts of persons who pretend to usurp or discharge illegally the corporate functions. As stated in *In re George Ringler, supra* (New York, cited in Fletcher, *op. cit.*, p. 158), the rule should prevail that if the election of some apparent directors is clearly invalid, their attempt to appoint other officers is equally illegal *as regards the corporation and its stockholders.* To hold otherwise would produce the incongruous result that mere intruders into a corporate board could legally elect others of their own choosing, thus usurping the powers of the corporation. If, in a proceeding where third parties are not involved, the corporation or its stockholders could not challenge, even collaterally, the validity of the title of some de facto officers, the latter could hold their positions indefinitely, without a legal basis therefor. We must take notice that Soler's interest in the case at bar, in representation of the directors who appointed him, is to control the corporation's business and properties. Irrespective of whether Vergne Roig could challenge Soler's title and the election of

the directors who appointed him or not, the truth is that Soler's appointment was also attacked by a group of stockholders and rival directors who intervened in the litigation with the express consent of the plaintiff. Those interveners who allege that they are the ones who really represent the corporation, should have the opportunity, by collateral attack, to estop the corporation from being controlled by a group of directors unlawfully elected, and those interveners directly interested in the corporation should have power to try to prove that the corporation was not legally authorized to appear as plaintiff in this suit.

The rule that the acts of the de facto officers are binding on third persons is not applicable unless it is shown that the officers have actually exercised their functions as such, and have been in the actual possession of the office during a reasonably uninterrupted period of time, since it is such more or less continuous acts which create the appearance or color of authority which induces people to believe that the title of those officers is valid. Fletcher, *op. cit.*, pp. 145, 147, § 372; 19 C.J.S. 78, § 740; *Lazenby* v. *Henderson, supra; Conaty* v. *Torghen*, 128 A. 338; *Consumers Salt Co.* v. *Riggins*, 208 Cal. 537; *Independence Land Co.* v. *Kingsbury*, 175 F. 2d 983. The directors who are alleged to be officers de facto must have been in charge of the matters of the corporation, as a question of fact. *Fernández* v. *District Court*, 71 P.R.R. 149; Fletcher, *op. cit.*, p. 147. They will not be de facto officers if they have not been in the possession or control of the seals, books, documents or properties of the corporation, or if they have not taken possession of the place which is reputed to be the corporation's office. Fletcher, *op. cit.* p. 147; *Waterman* v. *Chicago Ry. Co.*, 29 N. E. 689. The requirement of actually holding the position for a reasonably continuous period has not been fulfilled in the case at bar.

The reason of the rule of estoppel, as to de facto officers, is based on the validity of the acts of the "officers", on the

fact that the public has relied on said acts and that the corporation, by inaction, has shown its acquiescence to such acts. In the case at bar the corporation has not shown that it has implicitly consented to the acts of the directors who appointed Soler.

In their brief, plaintiffs and interveners contend that the suit filed in the Mayagüez Court has all the characteristics of a possessory injunction, and that the controversy should then be limited to the fact itself of the possession of the corporate properties and not to the right of possession. This is not a possessory injunction of real property, but the classical injunction. Plaintiffs have not alleged or shown that they have been in the possession of the properties and the business during the year prior to the complaint. Precisely what they pray for is that possession be granted, and the question of the right to possession is raised in the complaint. In the usual injunction proceeding, like the one herein, the validity of the title of Soler and of the directors who appointed him may be tried.

Therefore, it is necessary to consider the validity of the stockholders' meeting held on January 8, 1954, and the legality of the election of directors which took place at said meeting. The legality of the election of January 8 depends on the validity of the meeting of December 14, 1953, and especially on whether the meeting was adjourned in a legal manner. If the meeting of December 14 was adjourned to a future date because of lack of quorum, pursuant to by-laws of the corporation, the meetings of December 24, 1953, and of January 8, 1954, must be considered as a continuation of the meeting of December 14, legally adjourned to a future date, and the resolutions adopted in the meeting of January 8, when a quorum was in attendance would be valid, since the meeting of January 8 would have been legally constituted. *Sagness* v. *Farmers Co-operative Creamery Co.*, 293 N. W. 365; *Vogel* v. *Parker* (New Jersey), 193 Atl. 817, 818; *Atterbury* v. *Consolidated Coppermines Cor-*

*poration*, 20 A. 2d 743; 5 Fletcher, *Cyclopedia of Corpora-tions*, 91, § 2015, 1952 rev. ed.; Thompson, *Corporations*, Vol. 2, p. 290, § 928, 3rd ed.; Cook, *Corporations*, Vol. 2, p. 1630, § 601, 6th ed. On the other hand, if the meeting of December 14, 1953, was not legally adjourned to a future date, then the meetings of December 24 and January 8, 1954, would not be valid because they were not legally assembled, and the resolutions adopted therein would be null and void. *Noremac Inc.* v. *Centre Hill Court*, 178 S. E. 877, 881, and last-mentioned citations of Fletcher, Thompson and Cook.

Pursuant to the bylaws of the corporation the annual meeting of stockholders necessarily had to take place on December 14, 1953. The provision of the bylaws requiring that the annual meeting be held on that date was mandatory. *Steinberg* v. *Am. Bantam Car. Co.*, 76 F. Supp. 426. The provision in the bylaws requiring a quorum of four fifths of the outstanding stocks in the annual meeting of December 14 was also mandatory and essential. 13 Am. Jur. 521, § 480 As a matter of fact and irrespective of what was the cause of such situation, in the meeting of December 14 the quorum required by the bylaws was not present. Therefore, the stockholders who were present therein had no legal power to act or to adopt any resolution, with the sole exception of the resolution adjourning the session to a future date. *Kauff-man* v. *Meyberg*, (Cal.) 140 P. 2d 210; *Davidson* v. *American Paper Mfg. Co.*, 175 So. 753; Thompson, *op. cit.* Vol. 2, p. 297 *et seq.*, § 935; Fletcher, *op. cit.*, Vol. 5, 1952 rev. ed., p. 78 *et seq.*, § 2013. In the absence of a quorum, the meeting was not legally organized. *Davidson* v. *American Paper Mfg. Co.*, *supra*. The election of directors in a meeting where the corresponding quorum was not present was not valid. *Hill* v. *Town*, 128 N. W. 334. Pursuant to the terms of the bylaws, which we have copied, the resolution to adjourn the session, and the setting of a future date for the next meeting as a continuation of that of December 14, was an exclusive function of the stockholders present at the meet-

ing of December 14. The bylaws further provide that in the absence of a quorum, once the stockholders resolve to adjourn the session to some future date, the Secretary shall then issue the corresponding notice convening the stockholders for the next meeting. Pursuant to the bylaws, the function of the Secretary is purely ministerial, to give effect to the resolution of adjournment to a future date, adopted by the stockholders present at the meeting. The Secretary is an officer who lacks power to determine questions concerning adjournments and dates of meetings. The provisions of the bylaws in the instant case are consistent with the general rule, which we adopt, that the adjournment of a meeting in absence of a quorum to a specific future date is incumbent on the stockholders present at the meeting and not on the corporate officers, and therefore, if the resolution to adjourn is not adopted at the meeting and the Secretary issues the call without a previous resolution, said call or notice by the Secretary is null and void and subsequent meetings called by him lack validity. *Chicago Macaroni Mfg. Co.* v. *Boggiano*, 67 N. E. 17; *Egan* v. *Kelly*, 81 A. 2d 413; *State* v. *Kreutzer*, 126 N. E. 54; *State* v. *Cronan*, 49 P. 41; Fletcher, *op. cit.*, Vol. 5, 1952 rev. ed., p. 89, § 2015, to the effect that a meeting can be adjourned only by the act of the meeting itself and not by the act of an officer; 2 Thompson 290, § 928, 3rd ed.: "It must be remembered that the power to adjourn resides in the meeting and not in the officials appointed by law to call the meeting"; 2 Thompson 250, § 898, 3rd ed., to the effect that the Secretary is a ministerial officer who lacks power to call a meeting without a previous resolution; Cook, Corporations, Vol. 2, p. 1632, § 601, 6th ed., to the effect that a board of directors has no power to postpone a stockholders' meeting by sending out notices to that effect.

In the case at bar, when the meeting was commenced on December 14, 1953, and no quorum was present, some of the stockholders raised the question of absence of quorum and

moved for adjournment to some future date pursuant to the bylaws. The majority of stockholders present therein, who did not constitute a quorum, dismissed said motion and incorrectly alleged that a quorum was present. They undertook to elect new directors and closed the meeting without mentioning any future date. Clearly, the intention of said stockholders was to consider the meeting of December 14 as final without considering it necessary to hold future meetings. That is, upon deciding to adjourn the meeting, it was not their intention to continue on a future date, but to terminate finally the annual meeting. It was the Secretary, subsequently, who motu proprio, called a meeting on December 24, no such resolution having been adopted at the meeting of December 14. The Secretary himself stated that he was calling a new meeting because of doubts as to whether there was a quorum at the previous meeting. The call issued by the Secretary was null and therefore the meetings of December 24 and January 8, 1954, were also null and void; the election of the directors who appointed Soler as general manager being likewise illegal inasmuch as the provisions of the corporate bylaws were not fulfilled.

It could be alleged that from the standpoint of intrinsic justice the omission of the stockholders who met on December 14 to adjourn the meeting to a future date constitutes a mere technical irregularity which should yield to the reality that subsequent meetings were held on dates consistent with the bylaws and to the reality that the directors who appointed Soler were elected by a majority of the stockholders. But this is a case where the greater justice is better guaranteed by the fulfillment of the provisions of the bylaws. Those provisions have their reason of being. The best rule is to require that the holding of a future meeting be decided by the stockholders present at the meeting lacking a quorum. It would be a dangerous precedent to allow a ministerial officer of the corporation to have the legal power to make any decision as to that particular, in the absence

of a previous resolution by the stockholders. It may happen that in the absence of a quorum, the stockholders present would rather not hold future meetings or not continue the original meeting. The will of said stockholders must not be supplanted by the desires of the officers. The corporation preferably speaks through the general board of stockholders and not only through its officers. *Saldaña* v. *Comas*, 41 P.R.R. 336, 344. The stockholders constitute the corporation. They are the primary power through which corporate action is controlled and they constitute the origin, existence, and continuance of the corporation itself. Cook, *op. cit.*, Vol. 2, p. 1609, § 588; Thompson, *op. cit.*, Vol. 2, p. 246, § 895. All these vital powers of the stockholders can be exercised by them only in corporate meetings duly convened and properly organized for the transaction of business, pursuant to the law and the bylaws, in order that the joint act of its stockholders be manifested with order, stability, and safety for all of them including the minority stockholders. The majority generally prevails, but the will of the majority must be manifested through proceedings which serve to protect the interests of the minority stockholders.

Our refusal to give legal effect to the erroneous proceeding followed in this case, does not imply that the stockholders who back Soler are left without a safeguard. If a valid annual meeting can not be held, the former directors must continue in their positions until their successors are validly elected, but in that case the former directors are under the obligation to convene a new meeting within a reasonable period of time after the date the annual meeting should have been held, and if they refuse to do so, the stockholders concerned may bring a judicial action, for example, an action of mandamus, to compel the directors to isssue the call or give the proper notice for a meeting. 13 Am. Jur. 516; *Steinberg* v. *Am. Bantam Car. Co.*, *supra;* *People* v. *Cummings*, 72 N. Y. 433; Thompson, *op. cit.*,

Vol. 2, p. 252, 253, § 900; Cook, *op. cit.*, p. 1615, 1616, § 593. In brief, the majority of the stockholders should prevail but according to the law and the bylaws.

The judgment rendered by the Mayagüez Part on January 28, 1954, will be rendered void and set aside.

Mr. Justice Belaval did not participate herein.