THE PEOPLE, *ex rel.* Hart, *vs.* PHILLIPS & RITTERBAND.

Where in a plea to an information in the nature of a *quo warranto*, the defendant claimed title to the office of trustee of a religious corporation by virtue of his election for a former term which had expired, and a failure to choose a successor— whereby he was entitled to hold over: *Held*, that the plea must show positively *that no one had at any time been chosen to succeed the defendant;* and that a statement showing that one attempt had been made to choose a new trustee without out success, was insufficient.

A party who, at an election for trustess of a religious corporation has a minority only of the votes received by the inspectors, cannot upon a *quo warranto* information be declared elected, though it appear that a number of other legal votes, sufficient to have made up a majority, were offered to be given in his favor and were erroneously rejected.

The People *v.* Phillips.

In a proceeding by information in the nature of a *quo warranto*, the court is author-ized to render judgment upon the relator's right, or to omit to do so, as justice may require ; and where the facts upon which his right depended were obscurely stated, the court declined to render such judgment—leaving the question to be settled by a direct proceeding.

The qualifications of voters at elections of trustees of religious corporations are pre-scribed by the statute relating to such corporations, and are—membership of the church, congregation or society, attendance upon divine worship therein at least one year, and contributing to the support thereof according to its usages and cus-toms: and any by-law, usage or regulation requiring an *admission* by the trustees or congregation to the privileges of an elector, or the payment of a sum of money as a fee for such admission ; and also all by-laws or regulations abridging or ex-tending the qualifications of electors as prescribed by the statute, are void. *Per* BEARDSLEY, J.

Whether upon a *quo warranto* information, the title of the relator who obtained his election by receiving a majority of the votes given, can be avoided by showing that a number of legal votes sufficient to have elected his competitor were offered and illegally rejected, *quere. Per* BEARDSLEY, J.

INFORMATION in the nature of a *quo warranto*. The attor-ney general, on the relation of Henry I. Hart, in December, 1844, filed an information setting forth that a religious society called B'Nai Jeshurun, was organized under the act to provide for the incorporation of religious societies, passed April 5, 1813, and the acts supplementary to and amending the same; that for more than ten years last past it had been a body corporate, and enti-tled to all the rights and franchises conferred upon corporations organized under that act ; and that the office of trustee of such corporation is a public office and trust. It then states that the defendant, John B. Phillips, without any legal warrant, grant or right, hath for more than forty days last past, and still doth hold and execute such office of trustee of such corporation—and hath claimed and still claims to be a trustee of said corporation—and that he hath usurped, intruded into and unlawfully held and still holds the same, in contempt of the people of the state of New-York, &c. The information then avers that the relator Hart was duly elected a trustee on the 11th of August, 1844; and that the other defendant, Leon M. Ritterband, claims to be entitled to the said office, liberties, &c. of trustee in the place of Phillips, for which reason Ritterband is made defendant accord

ing to the statute, &c. Wherefore the attorney general prays process against Phillips and Ritterband, to answer, &c.

. Phillips pleaded that he does not think that the said people ought to impeach or trouble him, &c. because, admitting that he has assumed and exercised the office aforesaid, he says that on the 3d day of October, 1841, he was duly elected a trustee of the said corporation, and thereby became entitled to serve in such office for the term of three years, ending October 11th, 1844, and that Morland Micholl was at the same time elected a trustee of the corporation for the same term ; and that he, the defendant, and Micholl, accordingly served in said office as such trustees for such term ; but that in anticipation of the termination of their said offices, an election to supply the expected vacancies was held on the 11th day of August, 1844, upon which occasion A. Mitchell and T. A. Meyer were chosen and served as inspectors of election ; that due notice was given of such election according to the statute. The plea proceeds to state that it had been and still is the *custom and usage* of said society and corporation since its incorporation, for more than eighteen years, to dispose of seats in its place of worship by annual auction for one year to persons professing the faith of Israelites, whether previously stated attendants upon divine worship in said society or not; but the male persons so admitted to be seat holders were required by said custom to pay to the society an annual contribution as seat hire. The plea then sets out a *custom or usage* of the society, existing from the time of its incorporation, to the effect that all the *original* male members of the society were electors qualified to vote for trustees without contributing any thing as a fee for being admitted such electors, they having previously contributed ; and another *custom or usage* by which all the *sons* of said original members, and the sons of all admitted electors of said society became electors qualified to vote for trustees *when admitted by vote of the trustees* to be such electors, without the payment of any admission fee therefor, on account of their fathers having contributed ; and another *custom or usage* to the effect that no male person not being an original member nor the son of an original or admitted elector who had

paid a contribution for seat hire for his seat for twelve months next previous to the election of trustees, should be entitled to be an elector and to vote for trustees, unless he was admitted such elector by a vote of the trustees of the corporation, or the electors of the society—and should also have contributed towards the support of the society such further sum as he might be required by the trustees to pay, and as he might be able and willing to pay *for the privilege of being an elector;* and another *custom and usage* requiring the names of all the electors, whether original members or persons admitted as aforesaid, to be electors, to be registered by the clerk of the corporation. The plea then goes on to set forth several by-laws of the corporation respecting the admission of members and the qualifications of electors, and tending to corroborate the averments before mentioned respecting such customs and usages as are before stated; and it then avers that on the 11th day of August, 1844, at the election then held, the number of persons assembled entitled to vote for trustees as original members or admitted electors, qualified as before stated, and whose names were registered by the clerk as such electors as aforesaid, were one hundred and seven, and no more, that all these persons voted at such election by written ballots; and that the votes were thereupon canvassed by the inspectors, who determined and declared that fifty-six votes were given for Morland Micholl, fifty-four for the relator, fifty-one for A. L. Levy, and forty-seven for the defendant Ritterband; and that there was one ballot offered by an elector having upon it the names of Micholl and the relator, which was rejected for being double: that a number of persons, to wit, thirty, who were neither original members of the society, nor the sons of original or admitted members, but who had been seat holders, and stated attendants upon public worship in the society for one year, and had paid their seat hire during that time, but none of whom had paid any thing for the *privilege of being admitted electors* of trustees according to the regulations, customs and usages of the said society, and had *not been admitted to be electors thereof,* offered their votes for trustees at the said election, and presented their written ballots to the inspectors,

declaring that their said ballots were for A. L. Levy and the defendant Ritterband for such trustees; but the inspectors refused to receive such ballots, but declared that Micholl and the relator were chosen trustees: that one of the inspectors made a certificate of the election of Micholl and the relator under his hand and seal, but the other inspector refused to sign such certificate, and no certificate of the two inspectors was made; and that from and after said 11th of October, 1844, the defendant Phillips has held over as such trustee and still holds over, according to the statute, &c. without this that he has usurped the said office, &c. concluding with a verification and prayer for judgment.

To this plea the attorney general demurred, and the defendant Phillips joined in demurrer.

Ritterband pleaded that heretofore, to wit, on the 11th day of November, 1825, the male persons of full age belonging to the religious denomination called Jews, and who had then and there congregated for the worship of Almighty God, according to the rights of the German and Polish Jews, did assemble, &c. and became incorporated pursuant to the statute, setting forth the proceedings, by the name of B'Nai Jeshurun; that the office of trustee of said corporation is a public office and trust; and that said corporation is entitled to a sufficient number, not exceeding six trustees, &c. that the defendant Phillips and Morland Micholl were elected trustees in 1841, their terms of office to expire on the 12th of October, 1844; and that a notice was duly given of an election to be held on the 11th of August, 1844, to supply the vacancies expected to occur by the termination of their offices; and that the congregation then met for the purpose of such election, which was conducted by Meyer and Mitchell as inspectors; that *one hundred and seven persons* (who are named in the plea) each voted a written or printed ballot or ticket; and that such balloting resulted in the manner stated in the plea of Phillips, Micholl and the relator having the largest number of the votes received; that *twenty-eight* persons (whose names are given) tendered to the inspectors written or printed tickets, each containing the names

The People *v.* Phillips.

of Levy and the defendant Ritterband; that each of the persons who thus offered to vote, as well as all those who voted as aforesaid, were male persons of full age, and of the people called Jews; that the usage and custom of contributing to the support of the congregation has been and is as follows: Any Israelite who is permitted to hire a seat in their place of worship, pays therefor such sum as is agreed upon between him and the trustees, and he makes such further voluntary offering or contribution as he pleases; that the whole one hundred and seven voters, and also the twenty-eight individuals who offered their votes as aforesaid, had been each stated attendants upon divine worship in said congregation for one year immediately preceding the election, and had each contributed to the support of the said congregation, according to the usages and customs thereof; that the said inspectors of election refused to receive the votes of the twenty-eight individuals before named as having offered. their votes, upon pretence that they had not been *admitted* members of the congregation, in compliance with the provisions of certain illegal by-laws. Certain by-laws are then set forth which provide, in substance, that members of the congregation wishing to become electors, must be regularly admitted as such by the trustees or the congregation, and may be required to pay a sum of money for the use of the congregation, upon such admission. By means of the premises the defendant claims to have been elected to the office of a trustee of said corporation, and by virtue and warrant thereof he claims to be entitled to the office, traversing the title of the relator and of the defendant Ritterband, and concluding with a verification.

To this plea the attorney general interposed six replications, to all of which, except the fifth, Ritterband demurred, and the attorney general joined in demurrer; but as the opinion of the court turned upon the sufficiency of the plea, the subsequent pleadings which terminated in demurrers need not be stated. The fifth replication averred that at the election in 1844, the relator was elected, and in the rejoinder Ritterband averred that *he* was elected, as stated in his plea. Accompanying the demurrer book there was a stipulation between the parties in

tended as a substitute for a special verdict upon the issue, setting forth certain by-laws of the corporation and other facts, which so far as they are material are sufficiently referred to in the opinion of the court. No person appeared to argue on behalf of the defendant Phillips.

*G. Sullivan,* for the people.

*G. Wood & P. J. Joachimssen,* for the defendant Ritterband.

*By the Court,* BEARDSLEY, J. This information was filed in December, 1844. It alleges that Phillips, one of the defendants, had usurped the office of trustee of the religious society, incorporated by the name of B'Nai Jeshurun, and that for forty days and more then last past, he had unlawfully held and executed said office. The holding is confessed by Phillips, but he denies the usurpation; and in justification he sets up in his plea that having, in 1841, been duly elected to and taken upon himself the office of trustee in said corporation, for a term which expired on the 11th day of October, 1844, he held over and continued in said office from the day last mentioned, for the causes stated and set forth in the plea. This, he alleges, he had good right to do under the authority of an act passed the 15th day of February, 1826. (*Laws* 1826, *p.* 34, 3 *R. S.* 215.)

I do not regard it as at all clear that this statute applies to such a case as is attempted to be made by the plea; but this question was not made on the argument, and for the present purpose it is unnecessary to express any final opinion upon it. Conceding the applicability of the statute, the plea is still defective, for it fails to show that the defendant had any legal right to hold over after the 11th of October, when his regular official term expired.

The fact that no person had been chosen in his stead, was indispensable to the right set up by Phillips, for without this it cannot be pretended the statute authorized him to hold over. But such a case is not made by his plea. It is true it alleges that an election was held on the 11th of August, 1844, to supply

the vacancy which was to occur the succeeding October, by the expiration of Phillips' term of office, and it aims to show that no person was then chosen for that purpose.   Let this be conceded, (although it is only conceded for the sake of the argument, as the plea does not show it,) and it by no means follows that another election was not held, and a choice made, previous to the 11th of October.   An election might have been called, and held on any day, not less than six days before the vacancy was to occur.   (*Act of 5th April*, 1813, 3 *R. S.* 209, § 6.)   Phillips sets up a right to hold over after the expiration of his regular official term, and on that ground attempts to justify his continuance in the office : he was therefore bound to show clearly that no one had, at any time, been chosen to succeed him.   The plea fails to do this, and is therefore bad.   The people are, accordingly, entitled to judgment of *ouster* against the defendant, Phillips.   (2 *R. S.* 585, § 48.)

The principal question is between Hart and Ritterband, each of whom contends that he was duly chosen a trustee in the place of Phillips, at the election held on the 11th of August, 1844.   The information alleges that Hart was chosen on that occasion, (2 *R. S.* 582, §§ 30, 31,) but that Ritterband *claims* to be entitled to the office, for which cause he is made a party defendant.   (§ 45.)   Ritterband, in his plea, denies that Hart was chosen, and alleges that he was himself elected, for which cause he admits that he *claims* to be such trustee.

In his plea Ritterband states that an election was duly held on the 11th of August, for the choice of a trustee in the place of Phillips, and he admits that of the votes received by the inspectors, Hart had a greater number than himself, although he alleges that a large number of votes were offered to be given for him (R.) by qualified voters, and which, had they been received, would have given him a number exceeding those given and received for Hart; but he states that said votes, so offered for him, were rejected by the inspectors, who refused to receive or canvass them, for a cause which is charged by him to be illegal.

There are various replications to this plea, some of which

are demurred to, and thus the sufficiency of the plea is directly drawn in question.

It is not suggested in the plea that any of the votes given for Hart were by illegal voters; and of the whole number of votes given and received by the inspectors, the plea admits that a greater number were cast for Hart than Ritterband. This concession seems to me fatal to the claim that Ritterband was chosen at that election. Legal votes may have been rejected so that no one was rightfully chosen, and a new election would be proper; but certainly no one could have been elected who received a minority only of the legal votes which were actually given and received at the election in question. (*In the matter of the election of Directors of the Long Island Rail-Road Co.*, 19 *Wend.* 37 ; *Angell & Ames on Corp.* 72.)

Judgment must therefore pass against Ritterband, as he shows no title to the office.

The only question which remains has reference to Hart, who is alleged, in the information, to have been duly chosen a trustee at the election of the 11th of August. That he was chosen is not, in terms, denied by the defendant Phillips; but this decides nothing, for it is directly traversed by the defendant Ritterband. His plea, although it fails to show that he was duly elected, is quite sufficient as a denial that Hart was chosen. The election of Hart is therefore strictly in issue upon this plea, as it also is upon the fifth replication. Upon this issue the people hold the affirmative, and they are not entitled to judgment upon it unless the election of Hart is fully established.

Of the votes given and received by the inspectors of the election Hart had a greater number than Ritterband, and if none but illegal votes were rejected Hart must have been duly chosen. But twenty-eight votes were offered to be given for Ritterband which were rejected by the inspectors: if these had been received and allowed in his favor he would have had a clear majority over Hart.

The issue has not been tried by a jury, but a stipulation in the nature of a special verdict has been entered into by the parties. By this certain matters are admitted; 1. "All the facts

settled by the pleadings which terminate in demurrers." 2. Sundry by-laws and other matters which are specified in the stipulation.

That clause of the stipulation by which all facts *settled* by the pleadings are admitted, is very liable to be misapprehended. The plea of Ritterband, so far as it assumes to show that he was chosen a trustee, is insufficient, and it can hardly be said, with propriety, that any facts are settled by such a plea or by replications thereto which are met by demurrers. At all events, it is not unlikely that the parties and their counsel may have understood this branch of the stipulation somewhat differently from the court. This is one reason for not proceeding in the present case to a judgment on the alleged right of the relator; nor ought that to be done until we are informed of the particular ground on which the twenty-eight votes were rejected. This does not clearly appear by the stipulation, as convenience, at least, requires that it should. In this proceeding the court are not bound to render judgment upon the right of the relator, as they are upon that of the defendants: it may be done or omitted "as justice shall require." (2 *R. S.* 582, § 31.) And it seems to me it may with. great propriety be left for final adjudication on a direct proceeding against him if he shall think proper to enter into the office which will be vacated by the judgment against Phillips and Ritterband.

But I would not have it inferred from thus passing over this branch of the case, that I think Hart was rightfully chosen a trustee. As presented, this part of the case seems to me equivocal in matter of fact, but if I rightly apprehend the ground on which the votes were rejected, I think the inspectors plainly erred in refusing to receive these votes.

By the third section of the act of April 5, 1813, (3 *R. S.* 207,) any church, congregation or religious society, may proceed to elect trustees with a view to becoming incorporated, and at such election "every male person of full age, who has statedly worshipped with such church, congregation or society, and has formerly been considered as belonging thereto, shall be entitled to vote.' But at subsequent elections no person, although a mem-

ber, shall be permitted to vote "until he shall have been a stated attendant on divine worship in the said church, congregation or society, at least one year before such election, and shall have contributed to the support of said church, congregation or society, according to the usages and customs thereof." (§ 7.)

These sections prescribe the qualifications of electors, which in brief are: 1. Membership. No one·can be an elector who does not belong to such church, congregation or society. 2. He must have been for a year at least, a stated attendant on divine worship in said church, congregation or society. 3. He must have contributed to the support of the same, according to the usages and customs thereof.

These qualifications can neither be abridged or extended by any act of the trustees or of the corporators, but every person thus qualified has an incontestable right to vote at the election of trustees. The statute under which the incorporation was formed is its constitution, and every act in violation of this paramount law is necessarily invalid. This is a well settled principle of the common law, and is of universal application to all corporations. (1 *Bl. Com.* 475; 2 *Kent,* 277, 293, 294; *Angell & Ames on Corp.* 267, 273, 281, 6, 7, 8; *The King* v. *Westwood,* 7 *Bing. R.* 1; *The Commonwealth* v. *Woelper,* 3 *Serg. & Rawle,* 29; *Taylor* v. *Griswold,* 2 *Green's R.* 222.) The same principle is recognized and affirmed by the revised statutes. (1 *R. S.* 599, §§ 1, 2, 3.) Every corporation has power to make by-laws, but they must be consistent with its charter or they will be invalid. This power to make by-laws is sometimes vested in the whole body of the corporators, and in other instances in a select body; the act under which this was formed expressly authorizes the trustees to make rules and orders for managing the temporal affairs of such church, congregation or society." (3 *R. S.* 208, § 4.)

I think it unnecessary here to inquire whether the body of this corporation can make by-laws upon any subject, or whether the power is vested exclusively in the trustees; for neither can

have any authority to make a by-law which contravenes the act under which the corporation came into existence.

Without, therefore, adverting in detail to the by-laws referred to in the stipulation, and upon which, it would seem, the twenty-eight votes were rejected, it may be sufficient for the present occasion to observe, that as far as these by-laws required qualifications for the exercise of the right of voting, not recognized in the statute, they were wholly unauthorized and of no force whatever. If the person offering to vote was a member, a stated attendant for the required period, and had contributed to the support of the society according to its usage and custom, he was a legal voter. He was not bound to comply with a by-law which declares that he must be specially admitted to the privilege of being an elector, or which requires him to pay any specified sum for that privilege. No such restraint can be imposed upon the admission of members, otherwise qualified, to the right of voting. Indeed, the idea upon which these by-laws seem to have been framed and adopted, that persons may become members for the purpose of worship and contribution, and so far comply with what is usual and customary in the society, and still not be authorized to vote without special permission and the payment of some fixed or arbitrary sum, as a price for the privilege, is entirely fallacious. Membership, worship and contribution, carry with them, as an inseparable incident, the right to vote; for every such member is necessarily an elector. If the twenty-eight voters were excluded for not having complied with such by-laws, the inspectors erred, and Hart was not duly elected.

I have assumed upon this branch of the case that it is competent to attack and avoid the election of the relator, by showing, that although he received a majority of the votes given at the election, still a large number of legal votes were offered for Ritterband and improperly rejected, and which, had they been received, would have given him a clear majority over Hart. But it may admit of serious doubt whether an election can thus be invalidated. The principle has not been examined, and no opinion is intended to be expressed upon it. This, and other

questions which have been adverted to, may hereafter arise on a direct proceeding against the relator, when it will become necessary to pass upon them.

The people are entitled to judgment against Phillips and Ritterband, but no judgment is given as to the alleged right of Hart.

Judgment accordingly