In the Matter of the Petition of Stockholders of ROBERT CLARKE, INC., to Set Aside an Alleged Election of Directors. (Proceeding No. 1.)

In the Matter of the Petition of Stockholders of ROBERT CLARKE, INC., to Set Aside an Alleged Election of Directors. (Proceeding No. 2.)

IRVING T. SHERMAN and Others, Appellants; WILLIAM READ and Others, Respondents.

Second Department, January 31, 1919.

Corporations — elections — inspectors bound by stock certificate book — authority of president to determine qualifications of stockholders as voters — jurisdiction of Supreme Court in summary review of election under section 32 of General Corporation Law.

Inspectors of corporate elections are bound by the stock certificate book and have no authority to prevent stockholders appearing thereon from voting.

The president of a corporation has no right to determine the qualifications of stockholders as voters at an election.

Section 32 of the General Corporation Law, authorizing the Supreme Court to investigate in a summary way corporate elections, purports to deal with elections only, and matters directly related to them, and does not permit of an inquiry into the question whether or not the stock standing in the name of a stockholder on the books of the corporation represented more than his contribution to the purchase price of property transferred to the company, or his investment as a stockholder. Such question should be decided by an action.

APPEAL by Irving T. Sherman and others from two orders of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 13th day of July, 1918, setting aside an election of directors and granting other relief.

The appellants Sherman and Kreller state in their brief that they abandon their appeal from the order in proceeding No. 1, which involved the legality of an election of June twelfth.

*Hugo Wintner*, for the appellants.

*Charles Coleman Miller*, for the respondents.

JENKS, P. J.:

At the election for directors held on June 18, 1918, the stockholders divided into the Read and Kreller parties. The Read party handed in 69 votes for its nominees and the Kreller party 45 votes for its nominees, for 3 inspectors of elections respectively. But the president of the corporation, presiding, decided that the Read party was entitled to cast 34 votes and no more, and despite protests and demands of that party, declared the nominees of the Kreller party elected. Thereupon the Kreller party nominees acted as inspectors at the election for 3 directors, which followed immediately. The Read party prepared and attempted to vote the same 69 votes for its nominees for directors, and the Kreller party voted the same 45 votes for its nominees. The inspectors, however, returned that the Read party nominees had received but 34 votes and the Kreller party nominees 45 votes, whereupon, despite protests of the Read party and its demand that

Second Department, January, 1919.    [Vol. 186.

the said 69 votes be counted, the president declared that 3 directors had been elected by the said votes of the Kreller party, and the meeting was adjourned.

This is an application made under section 32 of the General Corporation Law by the stockholders who were of the Read party. The court, upon consideration of the petition and the affidavits presented by members of the rival parties, the president and one of the inspectors, decided that Read was entitled to vote upon all of the stock standing in Read's name, namely, 69 shares, and determined that the election was illegal. In this determination I think the court was correct.

It does not appear that there was any question presented, either to the president or to the inspectors, or passed upon, as to the *status* of Read as a stockholder upon the books of the company or as thereby qualified to vote at the election. But the sole ground of the rejection of some of the votes cast and attempted to be cast upon Read's stock, as that ground was avowed by the president at the election and as is now reiterated by him, by the inspectors and by some of the members of the Kreller party, is that the president theretofore at his own instance had made an investigation of the affairs of the corporation from its inception and had decided that some of the stock issued to Read and then standing in his name, and the stock issued to his wife and then standing in her name, had been issued as the result of a breach of trust by Read as a promoter in the acquisition of the property for the corporation and without consideration from him as a contributor to the corporation, or a stockholder in fraud of other stockholders and the corporation. It was represented upon this application that Read and Kreller agreed to purchase a business for transfer to a corporation to be formed; that Read and Kreller contributed certain moneys for the purchase price; that when the property was bought in accordingly by Read, it was sold by him to the corporation for a sum in excess of the price paid by him and Kreller, and that some of the stock issued to Read and Kreller represented that excess. In other words, the property had been capitalized at a greater sum than the purchase price, and some of the stock issued to Read and standing in his name at the time of the election represented more than his contribution to the purchase price

or his investment as a stockholder.  Kreller deposes that when he discovered that some of the stock issued to him was " a breach of trust," he returned it to the president, and that he voted at this election upon the stock only that represented his actual outlay as a promoter and a stockholder.  It is but just to Read to comment that his affidavit challenges and denies any wrongdoing on his part, with specific explanation of his entire relations as promoter, stockholder and official.

But as it is stated and admitted that the stock-certificate book at the time of the election showed that Read personally was holder of 59 shares of stock, and there was no direct question as to the correctness thereof, neither the president nor the inspectors could disfranchise Read.  The action of the inspectors was beyond their power.  Indeed, the president had no right to determine even the qualifications of stockholders as voters at the election.  (*State ex rel. Ryan* v. *Cronan*, 23 Nev. 437; Cook Corp. [7th ed.] § 611.)  And the inspectors were bound by the stock-certificate book.  (*Matter of Ringler & Co.*, 204 N. Y. 30; *Strong* v. *Smith*, 15 Hun, 222; 80 N. Y. 637, cited in *Matter of Ringler & Co., supra.*)  The president usurped powers, the inspectors exceeded their powers.  Their good faith, if established, would afford neither palliation nor excuse.

I do not understand that the learned counsel for the appellants would justify the conduct of the election by the said officers, but that his grievance is that the court in these proceedings had the power and consequently should not have refused to try the question that dictated the action of the president and the inspectors, or in any event should have sent it to a referee.  He contends that such authority is recognized in *Matter of Ringler & Co.* (*supra*) — not in the decision itself, but in the expressions of the court.  I do not agree.  The court in that case but declares that the statute affords a summary proceeding to investigate *elections* without regard to the cumbersome form of quo warranto, and cites only *Strong* v. *Smith* (*supra*).  The court points out that the statute affords the right to the Supreme Court to go behind the records, which the inspectors could not do.  But such declaration refers to the investigation of the *status*

of a stockholder to vote at the election; it does not mean that the statute authorizes the Supreme Court to substitute a summary proceeding to try out questions which are normally the subject of actions in the law or in the equity side of the court.  And there is no good reason why the Supreme Court should be authorized to depart from the normal procedure of a trial by action, to try summarily by affidavit or like proof the legal and equitable rights involved in the promotion and conduct of corporations between promoter, the corporation or its officers or its stockholders.  But there is good reason for a summary proceeding that can deal forthwith with elections that involve immediate control of the corporation.

The statute purports to deal with elections only, and matters directly related to them.  Examination of the sole authority cited in *Ringler's Case* (*supra*) as to the purpose and scope of the statute (*Strong* v. *Smith*), of the cases cited in *Strong's* case, and of the cases now cited by the learned counsel, will show that in none of them did the court presume to go so far afield as to try any such question as is presented by the action and contention of the appellants in this case, or even to intimate that the court had power. On the contrary, the court in those cases considered only the *status* of the stockholder as a voter at an election.  Such matters as are stated as a grievance against Read as a promoter, incorporator, stockholder or officer, do not relate to the election within the intendment and purview of the statute.

In *Matter of Utica Fire Alarm Telegraph Co.* (115 App. Div. 821) KRUSE, J., for the court, says:  " While the court has ample power under this section to determine any question relating to the election, even such as is merely incidental thereto when necessarily involved in the controversy, the proceeding is not an action, and is inappropriate for determining equitable claims or questions not necessarily involved in deciding the primary question. (*Farmer* v. *Farmer & Son Type Founding Co.*, 83 App. Div. 218, 225, 226; *Matter of Argus Company*, 138 N. Y. 557, 573.) " (See, too, *Matter of Supreme Council, Catholic R. & B. Assn.*, 142 App. Div. 312; *Matter of New York & Westchester Town Site Co., No. 2*, 145 id. 634, 635; *Farmer* v. *Farmer & Son Type Founding Co.*, 83 id. 225 *et seq.*)  Of course, the determination of the voting

power of the stock does not adjudicate questions that only belong to an action brought for the appropriate relief, rather than to a summary proceeding of this character.

But I think that the court afforded too great a measure of relief in declaring the candidates of the Read party elected as directors; it should have ordered a new election. (*People ex rel. Putzel* v. *Simonson*, 61 Hun, 338, cited in *Matter of New York & Westchester Town Site Co.*, *supra; Matter of Supreme Council, Catholic R. & B. Assn.*, *supra; Matter of Long Island R. R. Co.*, 19 Wend. 37; *People ex rel. Hart* v. *Phillips*, 1 Den. 388.)

The order in proceeding No. 2 is modified accordingly, and as so modified affirmed, without costs to either party.

MILLS, PUTNAM, KELLY and JAYCOX, JJ., concurred.

In proceeding No. 1: Order affirmed, without costs.

In proceeding No. 2: Order modified in accordance with opinion and as so modified affirmed, without costs to either party.