In the Matter of A. BRUDER & SON, INC. JULIET BRUDER, Individually and as Administratrix of the Estate of MILTON BRUDER, Deceased, et al., Appellants; BESSIE BRUDER, Respondent, et al., Defendants.

Argued October 12, 1950; decided November 30, 1950.

*George Trosk* and *Ephraim Berliner* for appellants. I. Section 47 of the Stock Corporation Law provides that at stockholders' meetings every " stockholder of record " shall have one vote for each share " standing in his name on the books of the corporation." Whatever right one may have, in a plenary action in equity, to establish his right to stock not standing in his name, it is settled that in a summary proceeding under section 25 of the General Corporation Law, to determine the validity of an election, the right to vote must be determined by the stock book, or, if there be none, by the stock certificate book, and equitable claims of one not there registered as a stockholder may not be recognized. (*Matter of Argus Co.,* 138 N. Y. 557; *Matter of D. J. Salvator, Inc.,* 268 App. Div. 919; *Matter of Utica Fire Alarm Tel. Co.,* 115 App. Div. 821; *Matter of Glen Salt Co.,* 17 App. Div. 234, 153 N. Y. 688; *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325; *Farmer* v. *Farmer & Son Type Founding Co.,* 83 App. Div. 218; *Matter of Robert Clarke, Inc.,* 186 App. Div. 216; *Matter of Ringler & Co.,* 204 N. Y. 30; *Benkard* v. *Leonard,* 231 App. Div. 625; *Matter of Bloch* v. *Gershman,* 272 App. Div. 218.) II. Bessie Bruder's proxy to her attorney to vote five of the fifty shares claimed by her was revoked by her personal attendance and participation in the meeting, and his vote thereon was not entitled to be counted. Hence, even if Bessie were entitled to vote, only the forty-five votes cast by her personally were validly cast for her slate, and since forty-five valid votes were admittedly cast for Juliet's slate, the result would be a tie. (*Matter of Public Ind. Corp.,* 19 Del. Ch. 398; *Matter of Schwartz & Gray,* 77 N. J. L. 415; *Bache* v. *Central Leather Co.,* 78 N. J. Eq. 484; *Archibald* v. *Indian Territory Assn.,* 190 Okla. 494.)

*Abraham Burstein* and *Herbert Burstein* for respondents. I. Bessie Bruder is the record stockholder of fifty shares of stock of A. Bruder & Son, Inc. (*Wheeler* v. *Millar,* 90 N. Y. 353; *Matter of McCafferty,* 147 Misc. 179; *Robertson* v. *de Brulatour,* 188 N. Y. 301; *Brisbane* v. *Delaware, L. & W. R. R. Co.,* 94 N. Y. 204; *Zander* v. *New York Security & Trust Co.,* 178 N. Y. 208.) II. The corporation and petitioner, Juliet Bruder,

and Marjorie B. Minchenberg are estopped from questioning the ownership by respondent of fifty shares of stock of the corporation. (*Matter of McCafferty,* 147 Misc. 179; *Kittredge* v. *Grannis,* 244 N. Y. 168; *Card* v. *Moore,* 68 App. Div. 327, 173 N. Y. 598.) III. Petitioners have failed in their effort to sustain the petition. (*Matter of Ringler & Co.,* 204 N. Y. 30; *Matter of Prophet,* 236 App. Div. 524; *Matter of Strong* v. *Smith,* 15 Hun 222, 80 N. Y. 637; *Benkard* v. *Leonard,* 231 App. Div. 625; *Burr* v. *Wilcox,* 22 N. Y. 551.) IV. Respondent is clearly a stockholder of record. (*United States Radiator Corp.* v. *State of New York,* 208 N. Y. 144.) V. The proxy given by Bessie Bruder to her attorney was never revoked.

FROESSEL, J. We are asked to determine, in this summary proceeding under section 25 of the General Corporation Law, which, if any, of two opposing slates of directors was validly elected at a meeting of the stockholders of A. Bruder & Son, Inc., held on January 3, 1950.

The facts are virtually undisputed. So far as pertinent here, we are told that the corporate appellant was organized on December 2, 1930, with an authorized capital stock of one hundred shares. It acquired the pawnbroker's business formerly conducted by Abraham Bruder, who died in 1943, and whose widow is the respondent Bessie Bruder. His son, Milton Bruder, who also died in 1943, was survived by his widow, Juliet, who is administratrix of his estate, and a daughter Marjorie. As sometimes happens, differences have arisen between Bessie Bruder and her daughter-in-law, Juliet.

The corporation had no stock book as required by section 10 of the Stock Corporation Law. It did have a stock certificate book which, at the time of the meeting in controversy here, disclosed that forty-five shares stood in the name of Juliet and fifty-five in the name of her deceased husband, Milton. On September 1, 1943, an agreement was entered into among the corporation, Bessie and Juliet; it unequivocally recites that Bessie owns fifty shares of stock in the corporation and Juliet forty-five. It provides, among other things, that Juliet and Bessie are to have equal representation on the board, and that the by-laws are to be amended to provide four instead of three directors. This of course could not be done without first chang-

ing the certificate of incorporation, which has not been done. On the same date, a second agreement was entered into among Bessie, Juliet and her daughter, Marjorie. It declared their intention " that the property involved herein be distributed in accordance with the true ownership thereof." It further provides that Bessie will become the owner of ninety-five shares of stock in said corporation, forty-five shares of which she will turn over to Juliet.

The records of the corporation also disclose that corporate dividends were paid to Bessie, Juliet and Marjorie on the basis of fifty, forty-five and five shares respectively in 1947 and 1948. While Marjorie was not a stockholder according to the stock certificate book, it is virtually conceded that she was regarded as the owner of the five shares still in the name of her father, Milton. The corporate records likewise disclose that Bessie, Juliet and Marjorie participated in and voted at a stockholders' meeting held on December 11, 1948, and that the parties recognized the ownership of the corporation's stock as aforesaid in miscellaneous statements and pleadings in other actions between them.

From the foregoing it appears (1) that the corporation had no stock book listing its stockholders; (2) that according to its stock certificate book the outstanding shares at the time of the meeting in controversy were held as follows: Juliet, forty-five shares, her deceased husband, fifty-five shares, and (3) that according to the agreements among the parties and the corporation, the dividend checks and minutes of the corporation, and admissions in miscellaneous actions between them, the actual ownership of the outstanding shares was as follows: Bessie, fifty shares; Juliet, forty-five shares; Marjorie, five shares.

We now come to the meeting of January 3, 1950, when the parties sought to elect a slate of directors. Juliet's forty-five shares and Milton's fifty-five shares were voted for her slate of three directors; Bessie thereupon voted her fifty shares for a different slate of directors. Thereupon, Juliet instituted this proceeding for the purpose of confirming the election of her slate; Bessie cross-moved for a dismissal of Juliet's application and for an order confirming the election of her own slate.

The Appellate Division, in affirming the court below, which confirmed the election of Bessie's slate, stated that it was " in

agreement that Bessie Bruder was a stockholder of record entitled to vote in person or by proxy her fifty shares of stock.'' (277 App. Div. 871.)

Section 47 of the Stock Corporation Law provides for the qualifications of voters at corporate meetings. It declares that every stockholder is entitled to '' one vote for every share of stock standing in his name on the books of the corporation.'' It then provides: '' The books and papers containing the list of stockholders shall be produced at any meeting of the stockholders upon the request of any stockholder. If the right to vote at any such meeting shall be challenged, the inspectors of election, or other person presiding thereat, shall require such books, if they can be had, to be produced as evidence of the right of the person challenged to vote at such meeting, and all persons who may appear from such books to be stockholders of the corporation entitled to vote may vote at such meeting in person or by proxy, subject to the provisions of this chapter.''

The '' books and papers containing the list of stockholders '' to which the section refers are, in the first instance, the stock book required to be kept by section 10 of the Stock Corporation Law, or in its absence any other record containing equivalent information, i.e., a list of stockholders, such as the stock certificate book (*Matter of Utica Fire Alarm Tel. Co.,* 115 App. Div. 821, 828), corporate agreements, etc. The obvious purpose of the statute, to facilitate the conduct of corporate affairs and make for certainty therein, dictates that where there is a stock book, such record is ordinarily conclusive as to the right to vote (*Matter of Argus Co.,* 138 N. Y. 557, 579, 581; *Matter of D. J. Salvator, Inc.,* 268 App. Div. 919; *Matter of Robert Clarke, Inc.,* 186 App. Div. 216; *Matter of Utica Fire Alarm Tel. Co., supra*). This is particularly so in a proceeding of this nature, which is summary and therefore inappropriate for the determination of questions properly triable only by plenary action, such as actual or equitable ownership (*Matter of Robert Clarke, Inc., supra,* p. 221; ·*Farmer* v. *Farmer & Son Type Founding Co.,* 83 App. Div. 218, 225–226). Since, however, the true ownership of the stock is clearly conceded in this case, we have no such problem here.

In the light of the foregoing and in the absence of a stock book, we agree with the Appellate Division that Bessie Bruder

was a stockholder of record entitled to vote in person or by proxy her fifty shares of stock, previously issued to Milton. There is no dispute that Juliet Bruder was entitled to vote her forty-five shares of stock. However, as to the remaining five shares standing in the name of Milton (that is, fifty-five less Bessie's fifty), said to be owned by Marjorie but not '' of record '' because they were not embraced in the 1943 agreements, we are of the opinion that they were properly voted in the name of Milton's estate by Juliet, his administratrix, and for her slate of directors. Under these circumstances, Juliet's slate had fifty votes and Bessie's had fifty votes, resulting in a tie.

On this record, therefore, we conclude that the Appellate Division erred as matter of law in failing to give effect to the five votes which it said Marjorie owned, but not of record, and which actually stood in Milton's name. It follows that the election of directors resulted in a tie vote and that no directors were elected.

Accordingly, the orders of the Appellate Division and Special Term should be reversed, and the petition and cross petition dismissed, without costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Ordered accordingly.