Samuel J. Joseph, J.
The petitioners herein, stockholders of Blinkley Productions, Inc., and Brinkley Enterprises, Inc., seek relief pursuant to section 25 of the General Corporation Law setting aside the election of directors of said corporations.
On May 18, 1954, the joint meeting was held of all of the stockholders of said corporations. At the meeting a controversy developed as to whether 81.70 shares of voting stock had been legally converted from preferred stock, and whether these shares should be allowed to vote. The president of the corporations and the inspectors of election contended at such meeting, that *508 any conversion that may have taken place was prohibited by the certificates of incorporation, and was illegal.
The certificates contain a prohibition against the conversion of preferred into common stock before July 1, 1955. It was the contention of the petitioners that the conversion had been authorized by the stockholders and was legal. The holders of the 81.70 shares were not allowed to vote and a total of 606.71 shares out of the 800 outstanding shares voted in favor of the present board of directors. Since it is necessary to have 75% or 600 of the outstanding shares to elect, all six members of the board of directors were declared elected. However, if the disputed shares had been recognized there would have been 881.70 shares and the present board of directors would not have been elected.
It is the petitioners’ contention that the stockholders’ ledger is conclusive of the right to vote by the holders of the 81.70 disputed shares and that, in this proceeding, the court has no jurisdiction to determine the validity of the conversion nor can it determine any legal or equitable claim not involved in the election.
The respondents argue, however, that the petitioners had no rig'ht to vote because the conversion of the stock was invalid since the by-laws and the certificates of incorporation were never changed and provide that no stock may be converted into voting stock before July 1,1955.
While it is true that stock records and stock certificate books of a corporation are ordinarily conclusive as to the right to vote (especially in a proceeding of this nature which is summary and therefor inappropriate for the determination of questions properly triable only by plenary action, such as actual or equitable ownership), this court, nevertheless, may in a proper case look behind the stock record books to determine the validity of the issuance of stock.
In this connection, we must note the distinction between the right of the court to determine whether a corporation has the right to issue stock (which is the issue here), and the right of the court to go into disputes between potential owners of stock, as to who owns the stock. Although the court has no jurisdiction to intervene in the latter situation, it has power to determine that there was an invalid issuance of stock, that the transfer or conversion was sham, the stock record books to the contrary notwithstanding, and that the disputed shares were not entitled to vote. (See Matter of Ringler & Co., 204 N. Y. 30; Matter of Bruder & Son, 302 N. Y. 52.) In the instant case, there is no dispute on the ownership of validly issued stock. *509 There is only a question as to whether the stock can legally be issued at all by the corporation. Since it appears that the stock book is directly and in obvious violation of the corporate charter provisions, the stock book will be ignored to that extent.
There is no question here but that the preferred stock was converted in express violation of the certificates of incorporation and may not be recognized. Accordingly, the actions taken at the stockholders’ meeting refusing to recognize this stock are upheld and the board of directors were validly elected. The objections are dismissed.
Settle orders on or before June 24, 1954.