Fttld, J.
This proceeding, brought pursuant to section 25 of the General Corporation Law, presents a regrettable conflict between an elderly father, William Faehndrich, and his 47-year-old son, Rudolph. Some 45 years ago, the father founded a business of manufacturing, importing and marketing cheeses, which he conducted under his own name. In 1925, he caused the business to be incorporated, with a capitalization of $5,000, represented by 50 shares of $100 par value common stock,[1] and, in 1929, the. authorized capitalization was increased from $5,000 to $100,000 and the authorized number of shares from 50 to 1,000. No new shares were, however, issued at that time.
Rudolph entered the business, shortly after its incorporation, some 31 years ago, when he was sixteen, and gradually assumed *471 greater and greater responsibility as the years went by. He apparently contributed substantially to the growth and success of the business, and in 1941 he became president, at a salary somewhere between $16,000 and $17,500 a year. His father held the offices of secretary and treasurer at an annual salary of $13,000.
In 1953, perhaps because of the father’s advanced age — he was then 74 — and a desire to afford protection to Rudolph, two stock certificates were prepared and issued: certificate No. 1 was for 157 shares in the name of the father and certificate No. 2 for 161 shares in the name of Rudolph. They were both signed by the father and son as officers. These two certificates represent, according to the son, all the outstanding stock of the corporation and, since each share has a par value of $100, account for the entire capitalization of $31,800,- and it may be observed, as confirmatory of this, that the tax returns since 1934 state the total capitalization of the company as $31,800.
As a result of growing differences between father and son, which appear to have been aggravated by the latter’s concern over the father’s transfer of property to a younger brother, Rudolph, as president of the corporation, caused a notice to be sent to the father advising of a special meeting of the stockholders. The notice, dated December 28, 1955, recited:
“ Please take notice that a meeting of the stockholders of William Faehndrich, Inc., will be held at the office of the corporation, 11 Harrison Street, New York 13, N. Y. on the 8th day of January, 1956, at 5.15 P.M. for the purpose of electing directors of the corporation for the ensuing year, or for such action or further business, as may arise at said meeting. ’ ’[2]
The corporation’s by-laws provided, apparently from its inception, that the presence of the holders of two thirds of the capital stock was required for any special meeting of stockholders.
The father failed to attend, the son asserting that he had been in the office a short time before and that he had reminded him of the meeting, the father claiming that he had been ill. Rudolph, as holder of 161 shares, was present at the meeting. He voted the stock in favor of himself and his wife and, of course, they *472 were elected directors. They thereupon held a directors’ meeting, elected Budolph president and treasurer, his wife, vice-president and secretary, thereby replacing the father as secretary-treasurer, and also terminated his employment. The father was thereafter notified of all the action thus taken.
The latter, protesting the legality of the meeting and the election, instituted this proceeding under section 25 of the General Corporation law, which provides that, “ Upon the application of any member aggrieved by an election * * * the supreme court at a special term thereof shall forthwith hear the proofs and allegations of the parties, and confirm the election or order a new election, as justice may require.” In his petition, the father requested an order declaring (1) that the election was illegal and that it be set aside; (2) that the offices of the newly elected directors be declared vacated; and (3) that a new election for directors be ordered, inspectors of election be appointed, and a new certificate for 45 shares be issued in his name and a certificate for 5 shares, in the name of his daughter.
The court at Special Term, deciding that the election was illegal, set it aside, although it did not order a new election.[3] It was the court’s conclusion that the notice of meeting was invalid because it did not ‘ ‘ carry home ’ ’ to the petitioner that it was the respondent’s “ purpose ” to remove him as a director, officer and employee of the corporation and that, to effect that end, the respondent was going to rely upon “ the asserted invalidity” of the provision in the by-laws for a quorum of two thirds of the capital stock. The Appellate Division unanimously affirmed without opinion and we granted leave to appeal.
Sympathy-provoking though the facts may appear, they afford no ground for relief under section 25 of the General Corporation Law; the petition should have been dismissed. The petitioner, having undertaken to do business as a corporation, must look to the laws regulating corporations to remedy any wrong done to him or to vindicate any right asserted by him.
*473 The notice of the stockholders’ meeting, admittedly received, fairly and adequately apprised the petitioner of the purpose of the meeting; in so many words, it recited that the meeting was called “ for the purpose of electing directors ”.[4] It is quite likely that the father did not fully realize the significance of such an election or the consequences to himself that would flow therefrom, but it may not be said that the notice of the meeting was insufficient or misleading in any way. If the purpose of the meeting be clearly stated, there generally is no duty to specify the course of conduct contemplated by the directors after their election, and no requirement to explain the consequences that will follow from the action they plan to take. There likewise was no necessity that there be notification that the by-law provision with respect to the two-thirds quorum requirement would be considered or treated as invalid. A stockholder is presumed to have knowledge of the by-laws of his corporation and of their legal effect.
Once we conclude that the notice of meeting was adequate and fair, the question arises as to whether a quorum was present at the January, 1956 meeting. A by-law of the corporation, as already noted, required a quorum of two thirds of the shares at special meetings of the stockholders and, coneededly, that amount of stock was not represented. However, the by-law provision, since it was not authorized by the certificate of incorporation as originally filed or by any amendatory certificate (Stock Corporation Law, § 9, subd. 1, par. [c]), is invalid, “ because it contravenes an essential part of the State policy ” as reflected in its statutes. (Benintendi v. Kenton Hotel, 294 N. Y. 112, 117.) Thus, the provision is in direct opposition to both section 55 of the Stock Corporation Law which fixes a quorum, for a meeting to elect directors, at a number ‘ ‘ not exceeding a majority” of the shares and section 23 of the General Corporation Law (dealing with the mode of conducting a special election of directors called pursuant to General Corporation Law, § 22, though in all likelihood not here pertinent) which declares that ‘£ the members attending shall constitute a quorum.” Accordingly, assuming that the more restrictive requirement of section 55 of the Stock Corporation Law applies, *474 whether a quorum was present at the meeting depends on whether Rudolph’s 161 shares constituted a majority of the outstanding stock. The petitioner was unable to produce any corporate records whatsoever showing that he was a holder of more than the 157 shares standing in his name. And the corporation’s tax returns disclosed its capital to be $31,800, which is entirely accounted for by the stock certificates for 157 shares and 161 shares at $100 a share. Had the father brought a plenary action, he might have established, notwithstanding the corporate records to the contrary, that he was the holder of 45 shares in addition to those 157 shares which had been issued to him in 1953, and that he was thus the holder of a majority of the corporation’s stock. As it is, the corporate records fully support the son’s claims.
Apart from this, however, it is clear that the purpose of section 25 of the General Corporation Law is to provide a summary review of a contested election, free from the procedural complications of a plenary proceeding. Where, therefore, conflicting claims of stock ownership and the right to vote are presented in a section 25 proceeding, the corporate stock-book and records must generally be accepted as conclusive, the issue being reserved for disposition and adjudication in a plenary action. (See Matter of Bruder & Son, 302 N. Y. 52, 57; Matter of Robert Clarke, Inc., 186 App. Div. 216, 221; Farmer v. Farmer & Son Type Founding Co., 83 App. Div. 218, 225-226.) This conclusion, as the opinion in Bruder (supra, 302 N. Y. 52, 57) makes clear, stems from the provisions of section 47 of the Stock Corporation Law that the stockbook and records are decisive as to who are the stockholders entitled to vote and from the very limited powers conferred on the court by section 25 of the General Corporation Law.
As already noted, the statute provides that the court “ shall * * * confirm the election or order a new election, as justice may require ’ ’, and it may be thought that the latter clause, ‘ ‘ as justice may require ”, enlarges the court’s power and authorizes it to grant different or greater relief than specified in the statute. That is not so. The language of the section, as well as its history (see Aranow and Einhorn on Proxy Contests for Corporate Control [1957], pp. 457, 459; also, State Court Review of Corporate Elections, 56 Col. L. Rev. 155, 166-168), establishes that the phrase simply modifies the words specifying the *475 only two alternatives open to the court, namely, to confirm the election or order a new one. (See, e.g., Matter of Baldwinsville Fed. Sav. & Loan Assn., 268 App. Div. 414, 419; Matter of Washington Ave. Baptist Church, 215 App. Div. 529, 530; see, also, Aranow and Einhorn, op. cit., p. 457; 1 White on New York Corporations [12th ed., 1947], pp. 459, 465.) As a matter of fact, whenever the legislature intended to give a court power to vary its relief according to the circumstances presented, it employed language expressing that thought — similar, indeed, to the statute of this state as it read before 1929 (2 Consol. Laws of New York, 1909, p. 1330; General Corporation Law, § 32, prior to 1929 amendment): the court was empowered to “ establish the election or order a new election, or make such order and give such relief as right and justice may require ” [5] — explicitly conferring such authority. (See N. J. Stat. Ann., 14:10-16 [Supp., 1945]; Cal. Corp. Code Ann., § 2238.)
It may well be that it would be more desirable and expedient if the court were empowered in the summary proceeding to pass on all issues, including questions of stock ownership, as is possible in other jurisdictions. (See, e.g., Cal. Corp. Code Ann., § 2238: Lawrence v. I. N. Parlier Estate Co., 15 Cal. 2d 220, 227; Del. Code Ann., tit. 8, §§ 225, 227, subd. [a]: Rosenfield v. Standard Elec. Equip. Corp., 32 Del. Ch. 238.) But that is, of course, a matter for the legislature rather than the courts and, as we have already demonstrated, section 25 of our General Corporation Law, as written and construed, permits the courts no alternative but to confirm the election or order a new one. The corporate records here presented establish that Rudolph owns a majority of the corporation’s outstanding stock and, accordingly, that a quorum was present at the stockholders’ meeting in question. It necessarily follows, therefore, that the election of the directors at that meeting was indisputably valid and that the officers thereafter designated by those directors are properly and legally in office.
In sum, then, since the notice of meeting in the case before us adequately and fairly stated its purpose, and no suggestion of *476 impropriety in conducting the meeting or the election is even advanced, no legal ground exists for vacating the election or setting it aside.
The order of the Appellate Division and that of Special Term should be reversed and the petition dismissed.
Conway, Ch. J., Desmond, Dye, Froessel, Yan Yoorhis and Burke, JJ., concur.
Orders reversed, etc.

. It is the father’s claim that two certificates were then issued, one for 45 shares in his name and one for 5 shares to his daughter, and he further claims that, although he originally had them, they cannot now be located.

. A second letter, dated the following day, December 29, called attention to the “typographical error” fixing January 8, which fell on a Sunday, and gave notice that the meeting would be held instead on January 9.

. We merely note at this point that the statute directs the court to either “confirm the election or order a new election”; the court failed to follow the statutory mandate when it simply “vacated” the election. (See Aranow and Einhorn on Proxy Contests for Corporate Control [1957], p. 462; also, State Court Review of Corporate Elections, 56 Col. L. Rev. 155, 170-171.) The reason for its limited order is, however, plain: nothing would have been gained under the circumstances by ordering a new election.

. The applicable statute, governing the sort of notice to be given the stockholders, simply recites that the ££ notice shall state the purpose or purposes for which the meeting is called” (Stock Corporation Law, § 45).

. Even when so worded, it is interesting to note, the provision was construed as limiting the court to a choice of confirming the election or ordering a new one. (See, e.g., Matter of Washington Ave. Baptist Church, supra, 215 App. Div. 529, 530.) Thereafter, in order to make the language of the statute conform to the decision of the court, the words “or make such order and give such relief” were deleted (L. 1929, ch. 650).