In the Matter of the Election of Directors of DOESKIN PRODUCTS, INC. CARYL MORRISON, Respondent; DOESKIN PRODUCTS, INC., et al., Appellants.

First Department, December 16, 1958.

*Abraham M. Glickman* of counsel (*Abraham M. Glickman,* attorney for Doeskin Products, Inc.; *Samuel H. Levinkind,* attorney for S. J. Smiley and others), for appellants.

*Leo Brady* of counsel (*Harry Balterman* with him on the brief; *Gordon, Brady, Caffrey & Keller,* attorneys), for respondent.

RABIN, J. This is an appeal, by leave of the court below from its order denying a motion to dismiss the petition in a special proceeding under section 25 of the General Corporation Law, in which it was sought to nullify an election of directors at the annual stockholders' meeting of Doeskin Products, Inc., held on April 29, 1958. The court was asked to direct a new election, petitioner contending that the election held was invalid for two reasons: first, because there was not a quorum present and, second, because there was fraud in proxy solicitation.

In asserting the lack of a quorum the petition alleges that 1,000,000 shares of Doeskin stock standing on the corporate books, in the name of one S. J. Smiley, and voted by him, were illegally issued and, therefore, could not be voted by him at the

election in question. If that contention be correct there was not a quorum. On the other hand if Smiley had the right to vote those shares there was a quorum and the election must be confirmed.

Petitioner claims that although Smiley's shares were issued by the corporation, they were invalid because their issuance was part of a scheme by one Birrell to defraud Doeskin. Birrell was formerly chairman of the board of directors of Doeskin. It is alleged that no consideration was paid to Doeskin for the shares and that the proceeds were diverted by Birrell to his own use. It is claimed that Birrell eventually caused the shares to be transferred to his nominee, Smiley, who knew or should have known the circumstances surrounding their issuance. Consequently, it is contended, these shares cannot be considered valid and Smiley had no right to vote them.

The question before us is whether, in a summary proceeding under section 25, the stock book records of the corporation are controlling on the question of stock ownership for voting purposes. It is petitioner's position that the corporate records are not binding on the court and that we may look beyond the stock book and try out the question of ownership. Some confusion has arisen as to the power of the court in this respect because of earlier and conflicting decisions. (See Aranow & Einhorn, Proxy Contests for Corporate Control [Columbia University Press, New York, 1957], ch. 19, p. 451 *et seq.*)

Whatever power the court has to grant summary relief under section 25 of the General Corporation Law, of course evolves from the statute itself. That section provides: "Upon the application of any member aggrieved by an election, and upon notice to the persons declared elected thereat, the corporation and such other persons as the court may direct, the supreme court at a special term thereof shall forthwith hear the proofs and allegations of the parties, and confirm the election or order a new election, as justice may require."

It should be observed at the outset that section 47 of the Stock Corporation Law provides that the stock books shall determine who are the stockholders entitled to vote at a meeting. And generally speaking it seems quite clear that this State has adopted the view that stock book records ordinarily are conclusive (*Matter of Faehndrich*, 2 N Y 2d 468; *Matter of Bruder & Son, Inc.*, 302 N. Y. 52).

There are decisions, however, which hold that in a summary proceeding such as this the court may look beyond the stock book in order to determine true ownership of stock or the right to vote (*Matter of Blinkley Prods.*, 15 Misc 2d 507, affd. 285

App. Div. 947; *Matter of Ringler & Co.,* 204 N. Y. 30; *Matter of Strong v. Smith,* 15 Hun 222, affd. 80 N. Y. 637; *Matter of Prophet,* 236 App. Div. 524).

The *Blinkley* and *Ringler* cases contain distinguishing features which make them here inapposite. In *Blinkley* this court affirmed a holding of the Special Term that shares of stock could not be voted by the owner of record where it was apparent, from the by-laws and certificate of incorporation, that the shares had been illegally converted from preferred to common. In that case it was not necessary — as it would be here — for the court to determine a question of ownership; the question of the validity of title to stock was not involved. Likewise in *Ringler* there was no question of title, for it was admitted " [t]hat they were not at that time beneficial owners of any stock in the corporation " (pp. 36–37).

*Strong v. Smith* (*supra*) and *Matter of Prophet* (*supra*), however, seem to hold that in a summary proceeding such as this, the court may, in order to determine the right to vote, disregard the stock book and try out the question of ownership.

In direct conflict with the *Strong* and *Prophet* decisions is *Matter of Clarke, Inc.* (186 App. Div. 216) decided in the Second Department. In that case, where the right to vote certain shares was challenged, the court declined in a summary proceeding to inquire into the question whether shares standing in the name of a particular stockholder represented more than his investment — that being the ground urged as a bar to voting the shares. The court held that the question could only be determined in a plenary action.

In any event, whatever question previously existed as a result of conflicting decisions has been resolved by the recent decisions of the Court of Appeals in *Faehndrich* and *Bruder* (*supra*). In *Matter of Faehndrich,* the Court of Appeals said (2 N Y 2d 474): " Apart from this, however, it is clear that the purpose of section 25 of the General Corporation Law is to provide a summary review of a contested election, free from the procedural complications of a plenary proceeding. Where, therefore, conflicting claims of stock ownership and the right to vote are presented in a section 25 proceeding, the corporate stock book and records must generally be accepted as conclusive, the issue being reserved for disposition and adjudication in a plenary action."

In *Matter of Bruder & Son, Inc.,* the Court of Appeals also said (302 N. Y. 57): " The obvious purpose of the statute, to facilitate the conduct of corporate affairs and make for certainty therein, dictates that where there is a stock book,

such record is ordinarily conclusive as to the right to vote [citing cases]. This is particularly so in a proceeding of this nature, which is summary and therefore inappropriate for the determination of questions properly triable only by plenary action, such as actual or equitable ownership ''.

These Court of Appeals decisions are controlling and we hold, therefore, that in this section 25 proceeding the court may not try out the question of stock ownership. It is urged, however, that this proceeding may be entertained without trying the question of ownership — in other words that the court would merely be passing upon the right to vote. But to determine the right to vote, independently of the stock book, it would be necessary to decide whether Smiley's stock is valid. A ruling that his stock was invalidly issued would, preforce, constitute a finding that he does not have valid title. Such ruling would be equivalent to a finding depriving him of the 1,000,000 shares of stock which, through his vote, he, in effect, asserts rightfully belong to him. That issue of ownership should not be decided without a full trial in a plenary action (*Matter of Faehndrich, supra*).

Holding, as we do, that Smiley had the right to vote his shares, since they were listed in his name, there was a quorum present at the stockholders' meeting of April 29, 1958 and consequently the election cannot be held invalid for lack of a quorum.

Nor may we order a new election on the second ground urged by petitioner, namely, that there was fraud in connection with proxy solicitation. The petition fails to show that the alleged proxy misrepresentation affected the result of the election — an essential prerequisite for the direction of a new election (*Matter of Hoe & Co.*, 14 Misc 2d 500, affd. 285 App. Div. 927, affd. 309 N. Y. 719). If we disregard entirely the proxy votes or even if we count them in favor of petitioner, the result of the election would still be the same. We accordingly reach the conclusion that the election must be confirmed.

The order appealed from should be reversed on the law, with $20 costs and disbursements, and the motion to dismiss the petition granted.

VALENTE, J. (dissenting). We dissent. We cannot agree that the Supreme Court is impotent to act under section 25 of the General Corporation Law to set aside an election of directors upon the basis of the allegations of the petition herein. Since a motion was made to dismiss the petition, pursuant to section 1293 of the Civil Practice Act, we must assume that petitioner can establish the truth of his allegations.

Those allegations challenge the election of directors at the stockholders' meeting held on April 29, 1958 on the ground there was no quorum present for the transaction of business. The absence of a quorum is in turn predicated on allegations that 1,000,000 shares of the common stock of the corporation, which were voted by one S. J. Smiley, the company's chairman of the board of directors, had been issued for no consideration and in violation of section 69 of the Stock Corporation Law. Other allegations depict a fraudulent scheme whereby the said shares came into the hands of Smiley and now stand in his name in the corporate stock book and records.

The majority of this court now holds that the stock book records are conclusive (relying on *Matter of Faehndrich*, 2 N Y 2d 468, and *Matter of Bruder & Son, Inc.*, 302 N. Y. 52) and that the court may not, in a proceeding under section 25, try out the question of the validity of the issuance of shares of stock voted at an election.

But *Faehndrich* and *Bruder* are not controlling in the instant proceeding. In those cases the court was asked to determine disputes between rival claimants to stock. They did not involve a question of the valid issue of the stock. Where potential owners of stock each claim the right to vote, the parties will be relegated to a plenary suit and their conflicting claims will not be determined in a section 25 proceeding. However, where, as in the instant case, there is an alleged invalid issue of stock, there is no impediment to the court's jurisdiction under section 25 to order a new election if the invalid stock was voted and affected the election.

This court so held in *Matter of Blinkley Prods.* (15 Misc 2d 507, affd. 285 App. Div. 947) where the same contentions, now urged by appellants, were unsuccessfully advanced. The majority attempts to distinguish *Blinkley* on the basis of lack of necessity for any hearing to determine stock ownership. But here too the issue is not stock ownership but the validity of the issuance of the stock. That a determination of the invalidity of the stock issued may affect the holders of the stock is no reason for refusing to rule initially as to the use of the stock in a corporate election.

We do not think that *Matter of Blinkley Prods. (supra)*, *Matter of Ringler* (204 N. Y. 30), *Matter of Strong* v. *Smith* (15 Hun 222, affd. 80 N. Y. 637) and *Matter of Prophet* (236 App. Div. 524) have by implication been overruled by the Court of Appeals in the *Faehndrich* and *Bruder* cases.

The court in a section 25 proceeding need only decide whether " the election sought to be reviewed is so clouded with doubt

or tainted with questionable circumstances that the standards of fair dealing require the court to order a new, clear and adequate expression of the security holders' will " (*Matter of Wyatt* v. *Armstrong*, 186 Misc. 216, 220).

Where, as here, the admitted allegations of the petition sufficiently allege the invalid issue of stock—which was voted at an election; and where there are no rival claimants to the stock, the court is not conclusively bound by the corporate stock book and records. As section 25 provides "the supreme court at a special term thereof shall forthwith hear the proofs and allegations of the parties, and confirm the election or order a new election, as justice may require ". To restrict the power of the court, as the majority does, tends to emasculate section 25 and is an unnecessary abdication of power in the face of allegations in a petition—which must be deemed true—disclosing a consummate fraud in the issuance of stock in violation of section 69 of the Stock Corporation Law. We cannot admit a disability to act in a summary fashion under such circumstances.

We, therefore, vote to affirm the order denying the application to dismiss the petition.

Breitel, J. P., and Bastow, J., concur with Rabin, J.; Valente, J., dissents in opinion, in which M. M. Frank, J., concurs.

Order so far as appealed from reversed on the law, with $20 costs and disbursements to the respondents-appellants, and the motions to dismiss the petition granted, with $10 costs.